# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEE WILLIAMS, *individually and in his representative capacity*,<br><br>    Plaintiff,<br><br>v.<br><br>TECH MAHINDRA (AMERICAS), Inc.,<br><br>    Defendant. | No. 3:20-CV-04684<br><br>**CLASS ACTION** |

## PLAINTIFF'S OPPOSITION TO DEFENDANT TECH MAHINDRA (AMERICAS), INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................II

TABLE OF AUTHORITIES ...........................................................III

I.   BACKGROUND .......................................................................... 1

   A.  TMA'S BUSINESS MODEL AND DISCRIMINATORY SCHEME ............................ 2

   B.  PLAINTIFF WAS A VICTIM OF TMA'S DISCRIMINATORY PRACTICES. .............. 3

II.  LEGAL STANDARD ................................................................. 5

   A.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6). 5

   B.  ARTICLE III STANDING. ...................................................................... 6

III. ARGUMENT ............................................................................ 7

   A.  PLAINTIFF HAS ADEQUATELY STATED A CLAIM FOR DISPARATE TREATMENT. 7

   B.  PLAINTIFF HAS STANDING TO ASSERT HIRING AND STAFFING CLAIMS AND TMA'S STANDING ARGUMENT IS A PREMATURE CHALLENGE TO CLASS CERTIFICATION. ......................................................................................... 11

   C.  PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED. ............................................ 15

     1.   Plaintiff's Claims Were Properly Tolled By a Previously-Filed  Class Action in Which Plaintiff Sought to Intervene. ................................................ 15

     2.   Plaintiff's Claim Is Also Tolled Because He Was an Asserted Member of the Grant Class. ....................................................................................... 17

     3.   Plaintiff Can Pursue Class Claims Because the Court in Grant Never Addressed the Propriety of the Class, in Which He Was an Intervenor, and China Agritech Does Not Apply. ...................................................................... 18

IV. CONCLUSION ..................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, (1974)……………...…………..17

*Arnold v. City of York*, No. 4:03-1352, 2004 U.S. Dist. LEXIS 21386 (M.D. Pa. June, 2004) .................................................................................................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 7, 8

*Ballentine v. United States*, 486 F.3d 806 (3d Cir. 2007) ........................................ 6

*Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407 (S.D.N.Y. 2014) ....................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................ 6, 7, 8

*Bell v. Lockheed Martin Corp.*, No. 08-6292 (RBK/AMD), 2010 U.S. Dist. LEXIS 62957 (D.N.J. June 23, 2010) .......................................................... 16,17

*Bennett v. Spear*, 520 U.S. 154 (1997) .................................................................... 7

*Causey v. Ford Motor Co.,* 516 F.2d 416 (5th Cir. 1975) ...................................... 13

*China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) ................................ 17, 19, 20

*Comcast Corp. v. National Ass'n of African American-Owned Media*, 140 S. Ct. 1009 (2020) .......................................................................................... 8

*Conley v. Gibson*, 355 U.S. 41 (1957) .................................................................... 7

*Cottrell v. Good Wheels*, No. 08-1738(RBK), 2008 U.S. Dist. LEXIS 88505 (D.N.J. Oct. 31, 2008) ....................................................................................... 6

*Crown*, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983)………...…………17

*Darden-Munsell v. Dutch Maid Logistics*, No. 10-103, 2011 U.S. Dist. LEXIS 84569 (W.D. Pa. July 13, 2011) .................................................................. 6, 10

*Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410 (6th Cir. 1998)………………12

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) ...................................... 14

*Grant v. Tech Mahindra (Americas), Inc.*, No. 3:18-cv-171 (D.N.D. 2019).......... 16

*Gratz v. Bollinger*, 539 U.S. 244 (2003) ................................................................ 14

*Hart v. BHH,* No. 15cv4804, 2018 U.S. Dist. LEXIS 188189 (S.D.N.Y. Nov. 2, 2018) ................................................................................................................. 19

*Hazelwood Sch. Dist. v. United States*, 97 S. Ct. 2736 (1997) .............................. 11

*Heldt v. Tata Consultancy Servs.*, 132 F. Supp. 3d 1185 (N.D. Cal. 2015) ........... 13

*Hosp. Council of W. Pa. v. City of Pittsburgh,* 949 F.2d 83 (3d Cir. 1991) ............ 6

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012) ................................................................................................ 6

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719 (5th Cir. 2018) ................................................................................ 11

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1997) ...................... 7, 8, 9

*Jones v. R.R. Donnelley & Sons Co.*, 124 S. Ct. 1836 (2004) ................................ 15

*Lenell v. Advanced Mining Tech.*, Inc., No. 14-cv-01924, 2014 U.S. Dist. LEXIS 172052 (E.D. Pa. Dec. 10, 2014) .................................................................... 13,19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................. 7

*Martin v. City of Beaumont,* No. B-87-1076, 1992 U.S. Dist. LEXIS 2970 (E.D. Tex. Feb. 19, 1992) ............................................................................................ 13

*Martinez-Santiago v. Pub. Storage,* 331 F.R.D. 94 (D.N.J. 2019) ........................ 12

*Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) ............................................ 12

*Neale v. Volvo Cars of  N. Am.,* 794 F.3d 353 (3d Cir. 2015) ............................... 12

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994) .. 16, 17

*Palmer v. Cognizant Tech. Solutions Corp.*, No. 2:17-cv-6848-DMG (PLAx), 2018 U.S. Dist. LEXIS 221058 (C.D. Cal. Sept. 24, 2018) ......................................... 14

*Parks v. Buffalo City Sch. Dist.*, No. 17-CV-631S, 2020 U.S. Dist. LEXIS 76469 (W.D.N.Y. Apr. 30, 2020)................................................................................... 10

*Ramirez v. STi Prepaid LLC,* 644 F. Supp. 2d 496 (D.N.J. 2009) ........................ 13

*Reichman v. Bureau of Affirmative Action*, 536 F. Supp. 1149 (M.D. Pa. 1982)... 12

*Schultz v. Midland Credit Mgmt., Inc.*, No. 16-4415(JLL), 2019 U.S. Dist. LEXIS 79889 (D.N.J. May 13, 2019)....................................................................... 19, 20

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)................................................ 9

*Town of New Castle v. Yonkers Contracting Co.*, 131 F.R.D. 38 (S.D.N.Y. 1990)15

*United States v. Nobel Learning Cmtys., Inc.*, 676 F. Supp. 2d 379 (E.D. Pa. 2009) ............................................................................................................................ 9

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................... 14

*Williams-Hopkins v. Allied Interstate, LLC*, No. 20-226(SDW)(LDW), 2020 U.S. Dist. LEXIS 91203 (D.N.J. May 26, 2020)........................................................ 17

**STATUTES**

42 U.S.C. § 1981..............................................................................................5

Fed. R. Civ. P. 8(a)(2)...................................................................................6, 7

**TREATISES**

FEDERAL PRACTICE & PROCEDURE (3d Ed. 2015) ..................................5, 11

NEWBERG ON CLASS ACTIONS (5th Ed. 2015)...........................................12

Plaintiff Lee Williams brings this action to remedy Defendant Tech Mahindra (Americas), Inc.'s ("TMA's") pervasive discriminatory scheme to favor South Asians in employment decisions throughout the United States. TMA's motion to dismiss Plaintiff's claims should be denied because: (1) Plaintiff adequately pleads a claim of racial discrimination under § 1981; (2) Plaintiff has standing to bring claims related to his termination and failure to promote by TMA, and TMA's challenge to his standing to represent a hiring class is premature on a Rule 12 motion, and is flawed on the merits because he alleges a general discriminatory policy and practices that affected applicants and employees alike; and (3) Plaintiff's claims are not time-barred because they were tolled by the pendency of an earlier class action in which he unsuccessfully attempted to intervene.

## I.   BACKGROUND

Defendant TMA is an American information technology ("IT") outsourcing and consulting company with over 5,000 employees in the United States. Compl. ¶ 2 (ECF No. 1). While South Asians make up only about 1-2% of the U.S. population, and only about 12% of the relevant IT labor market, approximately 90% (or more) of TMA's U.S. workforce is South Asian. *Id.* And all, or substantially all, of its managerial and supervisory staff are South Asian. *Id.* ¶ 17. TMA has obtained this grossly disproportionate workforce by engaging in a pattern and practice of

discrimination against non-South Asian applicants and employees in hiring, staffing, promotion, and termination decisions. *Id.* ¶¶ 2-3.

## A.      TMA's Business Model and Discriminatory Scheme.

TMA contracts with U.S. companies to provide IT-related services. *Id.* ¶ 11. Once TMA secures a contract with a client, it hires individuals to fill positions servicing that client, staffing positions with both current TMA employees and external applicants. *Id*. When employees' positions or projects come to an end, they are placed in an unallocated status referred to as being "benched." *Id.* These individuals must then seek a new position within TMA through the same application and interview process as external applicants. *Id*.

TMA has created a predominantly South Asian workforce by engaging in a company-wide pattern and practice of intentional discrimination against non-South Asians. *Id*. ¶ 2. Its discriminatory scheme consists of at least four mutually-reinforcing prongs that promote disparate treatment in its hiring, staffing, promotion, and termination decisions. *Id*. ¶¶ 2, 12.

First, each year, to fulfill its preference for South Asian employees, TMA petitions the federal government for thousands of H1-B visas, well in excess of its actual staffing needs. *Id*. ¶¶ 12-15. All, or nearly all, of these visas are for South Asian employees. *Id.* ¶ 15. TMA then gives preference to these South Asian individuals as U.S. positions become available, over non-South Asian employees

and external applicants. *Id.* ¶¶ 14-15. In addition, TMA will often displace existing non-South Asian employees from projects and place South Asian visa workers in those roles. *Id.* ¶ 15.

Second, TMA gives preference to South Asian applicants located within the United States over non-South Asian applicants. *Id.* ¶ 16.

Third, South Asian employees are given preference in promotion decisions, and as a result, the vast majority (if not all) of TMA's managers and supervisors are South Asian. *Id.* ¶ 17.

Fourth, TMA terminates non-South Asian employees—like Plaintiff—at highly disproportionate rates. *Id.* ¶ 18. This is due to TMA's preference for staffing positions with South Asians (including South Asian visa holders).

Collectively, these discriminatory practices have resulted in TMA's grossly disproportionate U.S. workforce, of which 90% (or more) is South Asian. *Id.* ¶¶ 2, 19, 25.

**B.    Plaintiff Was a Victim of TMA's Discriminatory Practices.**

Plaintiff Lee Williams was a victim of TMA's discriminatory practices. Plaintiff joined TMA in May 2014 as a Regional Manager / Senior Director of Business Development. He was highly qualified and had more than twenty years of professional experience in executive-level IT sales and management. *Id.* ¶ 20. Most of his colleagues at TMA (including his immediate supervisor, Manaish Sharma),

were South Asian. *Id*. ¶ 22. And at regional meetings, he observed that the vast majority of TMA's employees were South Asian. *Id*. ¶ 25.

TMA assigned Plaintiff to its Midwest territory to generate business from prospective banking clients that TMA purported to have a strong relationship with and an existing "pipeline" of future sales. *Id*. ¶¶ 21-23. When Plaintiff called potential clients in his territory, however, he learned that TMA's representations to him about its relationships with the potential banking clients were false, and that TMA had poor relationships with these clients and no "pipeline" of sales. *Id*. ¶ 24. While Plaintiff received no support in overcoming the issues with his assigned accounts (despite repeated requests), he was successful under the circumstances and performed well for TMA. *Id*. ¶¶ 24, 25.

Plaintiff's efforts and performance in his territory were recognized by TMA, and he received a small raise in February 2015 for his work. *Id.* ¶ 26. Yet, despite his exceptional qualifications and performance, Plaintiff was not promoted, due to TMA's discriminatory practice of favoring South Asians. *Id*. Instead, in June 2015, Plaintiff's South Asian manager placed him on an unjustified Performance Improvement Plan ("PIP"). *Id.* ¶ 27.

TMA's PIP was highly unusual for two reasons. First, the PIP's revenue goals were unattainable and unreasonable considering the territory that TMA assigned Plaintiff, and the misrepresentations made to him about the territory's clients and

opportunities. *Id*. ¶¶ 21, 23, 24, 27. Second, Plaintiff had performed well and had recently received a raise in acknowledgement of his performance. *Id*. ¶ 26. Plaintiff's PIP was implemented by TMA to create a pretext for terminating him. *Id.* ¶ 27. Plaintiff was terminated by TMA on August 19, 2015. *Id.* ¶ 28. But three weeks later, Plaintiff received a letter from TMA, falsely stating that he had resigned. *Id*.

Plaintiff asserts claims for race discrimination in violation of 42 U.S.C. § 1981 against TMA for its systemic pattern and practice of discrimination against non-South Asians. *Id.* ¶ 2. Plaintiff also seeks to represent the following class of individuals who were also victims of TMA's discrimination: "All persons who are not of South Asian race who: (1) sought a position with or within TMA and were not selected, (2) who were employed by TMA but not promoted, and/or (3) were employed by TMA and involuntarily terminated." *Id*. ¶ 29.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6).

When evaluating Rule 12(b)(6) motions that challenge the pleadings, "(1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader." 5B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1357 & n.11 (3d ed. 2007); *see also Darden-Munsell v. Dutch Maid Logistics*, No. 10-103, 2011 U.S. Dist. LEXIS 84569, at *4-

5 (W.D. Pa. July 13, 2011). The complaint must provide "only 'a short plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and grounds upon which it rests.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see* Fed. R. Civ. P. 8(a)(2). At this stage, "courts do not require heightened fact pleading or specifics." *Twombly*, 555 U.S. at 570.

**B.     Article III Standing.**

A motion to dismiss for lack of standing applies the same standard: "'Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party.'" *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)). The level of specificity necessary to avoid dismissal for lack of standing should not be "'exaggerated.'" *Cottrell v. Good Wheels*, No. 08-1738(RBK), 2008 U.S. Dist. LEXIS 88505, at *7 (D.N.J. Oct. 31, 2008) (quoting *Hosp. Council of W. Pa. v. City of Pittsburgh,* 949 F.2d 83, 86-88 (3d Cir. 1991)). "'[A]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice [to establish standing], for on a motion to dismiss [the courts] presume that general allegations embrace those specific facts that are necessary to support the claim.'"

*Bennett v. Spear*, 520 U.S. 154, 168 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.   ARGUMENT

TMA's motion should be denied because: (A) Plaintiff has sufficiently stated a claim for relief under § 1981; (B) Plaintiff has standing to pursue claims for hiring and staffing discrimination; and (C) Plaintiff's claims are not time-barred.

## A.   Plaintiff Has Adequately Stated a Claim for Disparate Treatment.

TMA argues that the complaint must be dismissed because, in order to bring a § 1981 claim, Plaintiff "must plead in the complaint that the adverse employment action occurred *because of* race." Mot to Dismiss at 7-9 (ECF No. 6) ("MTD").

But TMA's argument mischaracterizes the pleading standard. Under Fed. R. Civ. P. 8, "[a] pleading . . . must contain . . . a short and pain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but rather must only "give the defendant fair notice of what the . . . claim is and that grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to comply with the general pleading standard, the complaint "does not require 'detailed factual allegations,'" but "has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting *Twombly*, 550 U.S. at 570)).

Here, Plaintiff easily meets this pleading standard as he alleges that TMA engages in a company-wide discriminatory scheme in violation of § 1981 in which it favors South Asians in hiring, staffing, promotion, and termination/retention decisions. Compl. ¶¶ 12-18. Plaintiff further alleges that he was a victim of these practices when, despite performing well, he was not promoted, placed on an unreasonable PIP by his South Asian manager, and terminated. *Id.* ¶¶ 26-28. Nothing more is required to state a claim for disparate treatment. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Despite this, TMA argues that Plaintiff's claims are too "conclusory" and insufficient to "give rise to a plausible claim that he would have been promoted or not terminated *but for his race.*" MTD at 8. This argument is misplaced for two reasons. First, TMA ignores that Plaintiff advances pattern and practice claims under the burden shifting framework set forth in *International Brotherhood of Teamsters v. United States*, not individual claims where the "but for" causation standard applies. *See* Compl. ¶¶ 30-41.[1] Under *Teamsters*, Plaintiff need only allege that

---

[1] TMA's reliance on *Comcast Corporation v. National Association of African American-Owned Media* is misplaced because *Comcast* addressed whether "but for" applied to the "discriminatory intent" element of an *individual* § 1981 claim, which proceeds under a different framework and has different requirements of proof than pattern or practice claims. 140 S. Ct. 1009, 1013, 1019 (2020).

"racial discrimination was [TMA's] standard operating procedure" to establish his prima facie case. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1997); *United States v. Nobel Learning Cmtys., Inc.*, 676 F. Supp. 2d 379, 383 (E.D. Pa. 2009) (Plaintiff need only "sufficiently allege that 'discrimination was the company's standard operating procedure-the regular rather than the unusual practice.'" (quoting *Teamsters*, 431 U.S. at 336)). And on a motion to dismiss, Plaintiff is not required to plead "more facts than [he] may ultimately need to prove [at trial] to succeed on the merits." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511-12 (2002).[2]

Plaintiff has sufficiently alleged that TMA engages in a pattern and practice of intentional racial discrimination against non-South Asians in hiring, staffing, promotion, and termination decisions, and that Plaintiff suffered an adverse employment action due to TMA's pattern and practice of discrimination. *See* Compl.

---

[2] Because Plaintiff brings pattern and practice claims his prima facie case is limited to showing that "racial discrimination was [TMA's] standard operating procedure." *See Teamsters*, 431 U.S. at 336. At the liability phase of a pattern-or-practice case, "the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking," which "supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." *Id.* at 360 n.46, 362. Upon establishing a pattern and practice of discrimination, each class-member "need only show that [he or she] unsuccessfully applied for a job[, was not promoted, or was terminated] and therefore was a potential victim of the proved discrimination." *Id.* The burden then shifts to the defendant employer "to demonstrate that the individual applicant [or employee] was denied an employment opportunity for lawful reasons." *Id.*

¶¶ 2, 12-19, 26-28. Accepting Plaintiff's allegations as true, and construing them in the light most favorable to Plaintiff, Plaintiff has established every element necessary to prevail at both the liability and remedial phases under the *Teamsters* framework. *Teamsters*, 431 U.S. at 362; *Darden-Munsell*, 2011 U.S. Dist. LEXIS 84569, at *4-5.

Second, while not required, Plaintiff has satisfied the "but for" pleading standard, and has sufficiently alleged that he was not promoted and was terminated by TMA because of his race. For example, Plaintiff describes TMA's discriminatory scheme in detail and alleges that because he was not a member of TMA's favored group, he was placed on an unreasonable PIP as pretext and "terminated because of TMA's pattern and practice of discrimination." *Id.* ¶¶ 27-28. These factual allegations are sufficient to plead causation. *See Parks v. Buffalo City Sch. Dist.*, No. 17-CV-631S, 2020 U.S. Dist. LEXIS 76469, at *23-24 (W.D.N.Y. Apr. 30, 2020) (where "[plaintiff] alleges various examples of the allegedly widespread discriminatory practice, including the discrimination that she allegedly suffered[,] [a]t this stage, these allegations are minimally sufficient to defeat [a] motion to dismiss.").

While TMA argues that Plaintiff's "Complaint rests on his unsubstantiated allegation" concerning TMA's overwhelmingly South Asian workforce, MTD at 9, allegations need not be "proven" at the motion to dismiss stage because "in most

cases, plaintiffs will be unable to provide reliable statistics before they have access to discovery." *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 430 (S.D.N.Y. 2014); *see also Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) ("when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint"); *Arnold v. City of York*, No. 4:03-1352, 2004 U.S. Dist. LEXIS 21386, at *15 (M.D. Pa. June, 2004) (denying motion to dismiss Count I of complaint and holding while "defendants argue that the plaintiffs' alleged statistics . . . are faulty, . . . [t]he question of whether the plaintiffs' statistics . . . are valid must be construed in favor of the plaintiff at this stage in the proceedings.").[3]

**B.    Plaintiff Has Standing to Assert Hiring and Staffing Claims and TMA's Standing Argument is a Premature Challenge to Class Certification.**

TMA argues that Plaintiff lacks standing to assert a pattern and practice claim that includes hiring and staffing claims because TMA hired him and did not place

---

[3] TMA also argues that even if Plaintiff's statistics were accurate, "these statistics would not be enough to state a claim for employment discrimination." MTD at 9. But this argument also fails because where "gross statistical disparities can be shown, they alone may in a proper case constitute *prima facie* proof of a pattern of practice of discrimination" *Hazelwood Sch. Dist. v. United States*, 97 S. Ct. 2736, 2741 (1997); *Teamsters*, 431 U.S. at 339 ("We have repeatedly approved the use of statistical proof, where it reached proportions comparable to those in this case, to establish a prima facie case of racial discrimination in jury selection cases.").

him on the bench. MTD at 10. However, TMA's "standing" argument is (1) a premature challenge to the propriety of class certification and (2) incorrect.

First, once a named plaintiff establishes individual standing, "the issue becomes one of compliance with the provisions of Rule 23, not one of Article III standing." *Martinez-Santiago v. Pub. Storage,* 331 F.R.D. 94, 100 (D.N.J. 2019) (quoting *Neale v. Volvo Cars of N. Am.,* 794 F.3d 353, 361 (3d Cir. 2015)).[4] "[A]ny issues regarding the relationship between the class representative and the passive class members—such as dissimilarity of injuries suffered—are relevant only to class certification, not to standing.'" *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (quoting 1 NEWBERG ON CLASS ACTIONS § 2:6 (5th ed. 2015)); *see Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 423 (6th Cir. 1998).

TMA does not dispute that Plaintiff has standing to pursue failure to promote and termination claims, nor could it, as Plaintiff properly alleges that TMA failed to promote him and terminated his employment because of its pattern and practice of discrimination against non-South Asians, Compl. ¶¶ 26-28, and he seeks relief for his injuries. *Id.* at 12-13 (Prayer for Relief).

---

[4] TMA's citation to *Reichman v. Bureau of Affirmative Action*, 536 F. Supp. 1149, 1167-68 (M.D. Pa. 1982), *see* MTD at 10, is inapposite because that plaintiff suffered no adverse employment action of any kind, but claimed that "since she was responsible for implementing these allegedly discriminatory practices, she is legally liable for any discriminatory effects of such practices and policies." *Id.* at 1168. As such, she lacked threshold standing. *Id.*

TMA's argument that Plaintiff lacks standing to serve as a class representative for applicants and employees who suffered different types of adverse employment actions than him, "confuses the issues of individual standing with the secondary issue of class certification under Rule 23." *Garner v. VIST Bank*, No. 12-5258, 2013 U.S. Dist. LEXIS 179480, at *26 (E.D. Pa. Dec. 20, 2013).[5]

Since TMA's arguments are truly objections to class certification, they are premature and should not be decided at this time. *See Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 505 (D.N.J. 2009) (finding a defendant's "standing" argument was premature before the "class certification stage of the litigation.") *Lenell v. Advanced Mining Tech.*, Inc., No. 14-cv-01924, 2014 U.S. Dist. LEXIS 172052, at *7 n.2 (E.D. Pa. Dec. 10, 2014) (finding it premature to decide class certification issues on a motion to dismiss); *see also Heldt v. Tata Consultancy Servs.*, 132 F. Supp. 3d 1185, 1191-92 (N.D. Cal. 2015) ("TCS put[] its cart before the horse in an attempt to have the Court disqualify plaintiff Heldt as a class representative for certain claims at the pleading stage"); *Palmer v. Cognizant Tech. Solutions Corp.*, No. 2:17-cv-6848-DMG, 2018 U.S. Dist. LEXIS 221058, at *20 (C.D. Cal. Sept. 24,

---

[5] TMA's citations to *Causey v. Ford Motor Company,* 516 F.2d 416, 421 (5th Cir. 1975) and *Martin v. City of Beaumont,* No. B-87-1076, 1992 U.S. Dist. LEXIS 2970, at *42-43 (E.D. Tex. Feb. 19, 1992) are inapposite because they involved questions of standing with respect to non-class claims.

2018) ("any dissimilarities between their claims and those pertaining to putative class members should be addressed at the class certification stage.").

Second, while TMA's class certification argument is premature, it is also incorrect as a matter of law because when an employer "'operate[s] under a general policy of discrimination . . . a class of both applicants and employees'" would be appropriate "'if the discrimination manifested itself . . . in the same general fashion.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)); *see also Gratz v. Bollinger*, 539 U.S. 244, 265-68 (2003) (finding that single class representative could represent a class of two separate groups of applicants because, despite some differences, each was subject to a discriminatory practice that applied on a "classwide basis"). Here, Plaintiff alleges that TMA operates under a comprehensive, nationwide discriminatory scheme to achieve its discriminatory goal – the grossly disproportionate employment and advancement of South Asians in U.S. positions. Compl. ¶¶ 12-19. Because this scheme infects all of TMA's employment practices, both non-South Asian applicants and employees—including Plaintiff— are harmed. *Id*. ¶¶ 12-18, 26, 27, 39, 40.

Thus, TMA's attack on the propriety of class certification is premature and lacks merit.

**C.     Plaintiff's Claims Are Not Time-Barred.**

Plaintiff's § 1981 claim is timely because it was tolled during *Grant*, and TMA's arguments to the contrary fail. MTD at 12-17.

> **1.     Plaintiff's Claims Were Properly Tolled By a Previously-Filed Class Action in Which Plaintiff Sought to Intervene.**

For § 1981 claims based on wrongful termination ***and*** failure to promote, the statute of limitations is four years. *See Jones v. R.R. Donnelley & Sons Co.*, 124 S. Ct. 1836, 1845-86 (2004); MTD at 12 ("A four year statute of limitations pursuant to 28 U.S.C. § 1658 applies to claims for wrongful termination and failure to promote claims where the promotion would not have resulted in a new contract.").[6]

Since Plaintiff was terminated on August 19, 2015, TMA argues that Plaintiff's claims "should have been brought on or before August 19, 2019," and thus, Plaintiff filed his claims 246 days too late. MTD at 13.[7] TMA ignores that that

---

[6] TMA argues that "[a]ssuming Williams has standing . . . the time for him to bring a claim for hiring discrimination expired at the latest on August 19, 2017." MTD at 13. As addressed in Section B, *supra*, although Plaintiff is not bringing an individual failure to hire claim, he has standing to represent a class that includes applicants denied employment by TMA. While the two-year statute of limitations may apply to other potential class members, it is premature to decide those statute of limitations issues at this time *See e.g. Town of New Castle v. Yonkers Contracting Co.*, 131 F.R.D. 38, 43 (S.D.N.Y. 1990) (statute of limitations issues as to individual absent claimants should not affect class action determination issues and can be adjudicated in remedial stage of pattern and practice case).

[7] Plaintiff filed this action on April 21, 2020. *See* Compl. (ECF No. 1). There are 246 days between August 19, 2019 and April 21, 2020.

Plaintiff's statute of limitations was tolled for exactly 246 days, from June 5, 2019 to February 6, 2020, during the pendency of a motion to amend the class action complaint in *Grant v. Tech Mahindra (Americas), Inc*., No. 3:18-cv-171 (D.N.D. 2019) ("*Grant*") to add Plaintiff as a class representative and to join his claims.[8]

Equitable tolling is appropriate "where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). Likewise, the filing of a motion for leave to amend accompanied by the proposed amended complaint, tolls the statute of limitations. *Bell v. Lockheed Martin Corp*., No. 08-6292 (RBK/AMD), 2010 U.S. Dist. LEXIS 62957, at *33-36 (D.N.J. June 23, 2010) (filing of a motion to amend tolled the limitations period).

Here, Plaintiff timely asserted his claims on June 5, 2019 through a motion to amend in *Grant*. *See* Ex. 1. This motion attached a proposed amended complaint that included Plaintiff's claims and put TMA on notice of those claims. *Id.* However, the motion to amend was denied by the Court on February 6, 2020 when TMA successfully objected that the District of North Dakota lacked specific personal jurisdiction over Plaintiff's claims. Rep. and Recomm. (Dec. 5, 2019), Ex. 2; Ex. 3. Because the statute of limitations for Plaintiff's claims was tolled from June 5, 2019

---

[8] *See* Mot. for Leave to File 1st Am. Compl., ECF No. 52, *Grant v. TMA* (D.N.D. June 5, 2019), Ex. 1; *see also* Order (Feb. 6, 2020), ECF No. 59, *Grant v. TMA* (D.N.D. Feb. 6, 2020), Ex. 3.

to February 6, 2020 (246 days), and Plaintiff filed his complaint in this matter on April 21, 2020 (4 years and 246 days from his termination by TMA), Plaintiff's claims are timely. *Oshiver*, 38 F.3d at 1387; *Bell*, 2010 U.S. Dist. LEXIS 62957, at *33-36.

> **2.     Plaintiff's Claim Is Also Tolled Because He Was an Asserted Member of the Grant Class.**

TMA argues that Plaintiff cannot benefit from *American Pipe* tolling because he was not a member of the putative class in *Grant*. MTD at 15-17.  While this argument is moot given the tolling during the pendency of the motion to amend, it is also flawed.

Under *American Pipe*, a putative class member's individual claims are tolled until the class claims are resolved (either through adjudication on the merits, denial of class certification, or exclusion from the class). *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974); *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 350 (1983) (establishing that filing of a class action tolls the statute of limitation for "all asserted members of the class"); *Williams-Hopkins v. Allied Interstate, LLC*, No. 20-226(SDW)(LDW), 2020 U.S. Dist. LEXIS 91203, at *5 (D.N.J. May 26, 2020) ("'[t]he timely filing of a class action,' however, may toll the statute of limitations 'for all persons encompassed by the class complaint.'" (quoting *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018))). Plaintiff's claims were tolled during the

pendency of the *Grant* class action because he was a member of the "asserted" class. The proposed class in *Grant* included, "[a]ll persons who are not of South Asian race or Indian national original . . . who sought a promotion within TMA and were not promoted, and/or who TMA involuntarily terminated." *Grant* Compl. ¶ 33, Ex. 4. This included Plaintiff. Compl. ¶¶ 26-28.

Although TMA asserts that Plaintiff would not qualify as a class member in *Grant* due to "differences in his and Grant's roles," MTD at 15, the class definition in *Grant* does not limit that class to particular roles with TMA. Grant Compl. ¶ 33, Ex. 4. In addition, in *Grant*, Plaintiff sought to intervene as a named plaintiff, but the Court stayed the case, ordered Plaintiff Grant to arbitration, and denied the motion to amend as moot. *See* Ex. 1; *see also* Ex. 3 at 21. The *Grant* court never addressed the merits or the proper scope of class certification. *See* Ex. 2; Ex. 3. Thus, Plaintiff was an "asserted member" of the class in *Grant* and his claims were tolled by that class action.

### 3.    Plaintiff Can Pursue Class Claims Because the Court in Grant Never Addressed the Propriety of the Class, in Which He Was an Intervenor, and *China Agritech* Does Not Apply.

TMA argues that *China Agritech* prevents Plaintiff from serving a class representative in this matter, MTD at 16, but TMA is both procedurally and substantively mistaken.

Procedurally, the argument is premature because "the question of whether a class is ultimately certifiable is premature when evaluating a motion to dismiss." *Lenell*, 2014 U.S. Dist. LEXIS 172052, at *7 n.2.

Substantively, TMA's argument is flawed because *China Agritech*'s prohibition on tolling only applies when a repeat class action is brought after the denial of class certification in the prior action. 138 S. Ct. at 1804; *see Hart v. BHH,* No. 15cv4804, 2018 U.S. Dist. LEXIS 188189, at *6-8 (S.D.N.Y. Nov. 2, 2018) (finding that the limitation on class action tolling form *China Agritech* only applies when a successive class action is brought after denial of class certification in the prior action).

In *Grant*, by contrast, the court never denied (or otherwise ruled on) class certification.  After the court in *Grant* compelled the named plaintiff to arbitration in response to TMA's motion, and denied Plaintiff's timely motion to intervene, Plaintiff filed this case in this forum, in which the Court has personal jurisdiction. Thus, *China Agritech*'s prohibition on tolling is inapplicable, and Plaintiff's claims were timely brought in this litigation. *See Schultz v. Midland Credit Mgmt., Inc*., No. 16-4415(JLL), 2019 U.S. Dist. LEXIS 79889, at *32-35 (D.N.J. May 13, 2019) (*American Pipe* tolling applies to putative class members' claims who seek to intervene through a motion to amend).

In fact, Plaintiff's course of action is consistent with what the *China Agritech* court anticipated and implicitly approved. Plaintiff sought to intervene in *Grant* after TMA raised challenges to the *Grant* plaintiff's adequacy to serve as a class representative and the forum in which it was brought due to Mr. Grant's arbitration agreement with TMA. *Compare* Ex. 1; TMA's Mot. to Compel Arb., Ex. 5; Ex. 3, *with China Agritech*, 138 S. Ct. at 1807 n.2 ("as class discovery proceeds and weakness in the class theory or adequacy of representation come to light, the lead complaint might be amended or a new plaintiff might intervene."). Under those circumstances, *China Agritech* permits *American Pipe* tolling. *See Schultz*, 2019 U.S. Dist. LEXIS 79889, at *32-35 (holding that *American Pipe* tolling applies under *China Agritech* to plaintiffs seeking to intervene in a class action through an amended complaint); *see also Oshiver*, 38 F.3d at 1387 (equitable tolling applies when claims are filed in the wrong forum).

In sum, Plaintiff's claim is not time barred because: the statute of limitations was equitably tolled for sufficient time by the pendency of his motion to amend in *Grant*; and, alternatively, because *American Pipe* tolling applies.

## IV. CONCLUSION

For the foregoing reasons, TMA's Motion should be denied. To the extent the Court grants any part of TMA's Motion, Plaintiff respectfully requests that the dismissal be without prejudice and with leave to amend.

Dated: July 13, 2020                    /s/Jonathan Rudnick
                                        Jonathan Rudnick, Esq.
                                        788 Shrewsbury Avenue, Suite 204
                                        Tinton Falls, NJ 07724
                                        (732) 842-2070
                                        (732) 879-0213 (Fax)
                                        jonr@ronrudlaw.com

                                        *Attorney for Class Plaintiff and*
                                        *Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on

all counsel of record by electronic service through the Clerk of the Court's CM/ECF

filing system.

Dated: July 13, 2020                    By: /s/ Jonathan Rudnick
                                        Jonathan Rudnick