Exhibit 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
### EASTERN DIVISION

RODERICK GRANT,              )
                                    )
        Plaintiff,         )
                                      )
        v.               )     Case No. 3:18-cv-00171-DLH-ARS
                                      )
TECH MAHINDRA (AMERICAS), INC.    )
                                      )
        Defendant.      )
                                      )

**DEFENDANT TECH MAHINDRA (AMERICAS), INC.'S MEMORANDUM OF LAW**
**<u>IN SUPPORT OF ITS MOTION TO COMPEL INDIVIDUAL ARBITRATION</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     GRANT AND TECH MAHINDRA HAVE AN ARBITRATION AGREEMENT ........ 1

II.    THIS COURT SHOULD COMPEL INDIVIDUAL ARBITRATION ........................... 1

    A.     The Federal Arbitration Act Requires Enforcement Of Arbitration
         Agreements According To Their Terms. ............................................... 1

    B.     The Agreement Covers Grant's Claims. ............................................... 2

    C.     This Court Should Order Grant To Arbitrate His Claims On An Individual
         Basis And Dismiss The Class Claims. ................................................. 6

         1.     Whether Grant's Agreement requires individual arbitration is a
                 gateway question of arbitrability for this Court. ....................... 6

         2.     Grant must arbitrate individually, not as a class representative. ............... 9

III.   CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AlixPartners, LLP v. Brewington*,
  836 F.3d 543 (6th Cir. 2016) ........................................................................12

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................... *passim*

*AT&T Technologies, Inc. v. Commc'n Workers*,
  475 U.S. 643 (1986) ..........................................................................2

*Catamaran Corp. v. Towncrest Pharmacy*,
  864 F.3d 966 (8th Cir. 2017) ........................................................6, 9

*CD Partners, LLC v. Grizzle*,
  424 F.3d 795 (8th Cir. 2005) ..........................................................2

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
  809 F.3d 746 (3d Cir. 2016).........................................................8, 9

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001) ..........................................................................1

*Dahman v. Embassy of Qatar*,
  Civil Action No. 17-2628 (JEB), 2019 U.S. Dist. LEXIS 11865 (D.D.C. Jan.
  25, 2019) .......................................................................................4, 5

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)..........................................................................2

*Del Webb Communities, Inc. v. Carlson*,
  817 F.3d 867 (4th Cir. 2016) ........................................................7, 8

*Dominium Austin Partners, L.L.C. v. Emerson*,
  248 F.3d 720 (8th Cir. 2001) ........................................................11

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)....................................................................11

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995).........................................................................6

*Green Tree Financial Corp. v. Bazzle*,
    539 U.S. 444 (2003) ................................................................6, 7, 8, 9

*Huffman v. Hilltop Cos., LLC*,
    747 F.3d 391 (6th Cir. 2014) ...................................................................12

*Hull v. NCR Corp.*,
    826 F. Supp. 303 (E.D. Mo. 1993) ............................................................5

*ING Financial Partners v. Johansen*,
    446 F.3d 777 (8th Cir. 2006) .....................................................................3

*Keymer v. Management Recruiters International, Inc.*,
    169 F.3d 501 (8th Cir. 1999) ..................................................................3, 4

*Lamps Plus, Inc. v. Varela*
    (No. 17-988) ..............................................................................................13

*Lyster v. Ryan's Family Steak Houses, Inc.*,
    239 F.3d 943 (8th Cir. 2001) .....................................................................3

*MedCam, Inc. v. MCNC*,
    414 F.3d 972 (8th Cir. 2005) .....................................................................2

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .......................................................................................5

*Opalinski v. Robert Half Int'l Inc.*,
    677 F. App'x 738 (3d Cir.), *cert. denied*, 138 S. Ct. 378 (2017) ....................12, 13

*Opalinski v. Robert Half Int'l, Inc.*,
    Civil Action No. 10-2069, 2015 WL 7306420 (D.N.J. Nov. 18, 2015), *aff'd*,
    677 F. App'x 738 (3d Cir.), *cert. denied*, 138 S. Ct. 378 (2017) ....................13

*Opalinski v. Robert Half International Inc.*,
    761 F.3d 326 (3d Cir. 2014) ...................................................................7, 8

*PRM Energy Sys., Inc. v. Primenergy, L.L.C.*,
    592 F.3d 830 (8th Cir. 2010) .....................................................................2

*Reed Elsevier, Inc. v. Crockett*,
    734 F.3d 594 (6th Cir. 2013) ..........................................................6, 11, 12

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*,
    559 U.S. 662 (2010) ...........................................................6, 9, 10, 13

*Varela v. Lamps Plus, Inc.*,
    701 F. App'x 670 (9th Cir. 2017) .............................................................13

*Webb v. Oaktree Med. Ctr., P.C.*,
    No. 3:18-cv-00924-JMC, 2018 U.S. Dist. Lᴇxɪs 108185 (D.S.C. June 28,
    2018) ..................................................................................................................................5

*Zeller-Landau v. Sterne Agee CRT, LLC*,
    Civil Action No. 17-3962, 2018 U.S. Dist. Lᴇxɪs 3532 (E.D. Pa. Jan. 9, 2018) ......................5

**Statutes**

9 U.S.C. § 4 ......................................................................................................................................1

Plaintiff Roderick Grant has sued Tech Mahindra (Americas), Inc. ("TMA"), in derogation of his contractual promise to arbitrate. This Court should compel Grant to individual arbitration.

## I.    GRANT AND TECH MAHINDRA HAVE AN ARBITRATION AGREEMENT

Grant, a former TMA employee, alleges discrimination claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Previously, however, Grant agreed to arbitrate claims like these. His employment contract (the "Agreement") provides that "Any controversy or dispute relating to this Agreement or the obligations arising there under shall be resolved by arbitration by one arbitrator under the rules of the American Arbitration Association. . . ." Ramesh Decl. ¶ 6, Exh. A, ¶ 20 at p.7.[1]

## II.    THIS COURT SHOULD COMPEL INDIVIDUAL ARBITRATION

Grant has refused to arbitrate, but his counsel has not offered a substantive reason why. *See* Gage Decl. ¶ 4, Exh. A. Because a binding arbitration agreement covers the claims here asserted, Grant should be ordered to arbitrate his claims — and to do so on an individual basis — as shown below.

### A.    The Federal Arbitration Act Requires Enforcement Of Arbitration Agreements According To Their Terms.

The Federal Arbitration Act permits a party to a written arbitration agreement to petition for an order compelling the parties to arbitrate. 9 U.S.C. § 4. The FAA applies to contracts in the employment context, except for those involving transportation workers. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). The FAA applies here, because Grant worked for TMA, a global company operating in nineteen states across the United States, as a Senior

---

[1] This memorandum is supported by the Declaration of Anitha Ramesh ("Ramesh Decl."), located at Exhibit 1; the Declaration of Renjith Pootheril Soman ("Soman Decl."), located at Exhibit 2; and the Declaration of Kenneth W. Gage ("Gage Decl."), located at Exhibit 3.

Technical Associate, and then, as a Systems Analyst, providing production application support in interstate commerce to TMA's client, AT&T.  Soman Decl. ¶¶ 5-7.

The FAA reflects a "liberal federal policy" in favor of arbitration.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 346 (2011).  When a dispute falls within the scope of a valid arbitration agreement, the FAA requires the court to direct the parties to arbitrate.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

### B.    The Agreement Covers Grant's Claims.

An order to arbitrate "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Commc'n Workers*, 475 U.S. 643, 650 (1986) (citation omitted); *accord MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005) (same).

Here, the arbitration promise is broad.  It covers "any controversy or dispute" that "relat[es] to this Agreement or the obligations there under."  The Eighth Circuit has analyzed the scope of similar phrases, such as those covering "all disputes arising under" an agreement, *see PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836–37 (8th Cir. 2010), and disputes "arising out of or relating to" an agreement, *see CD Partners, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir. 2005).  Facing a clause such as these, courts compel arbitration "as long as the underlying factual allegations simply 'touch matters covered by' the arbitration provision." *PRM Energy*, 592 F.3d at 837 (citations omitted).

Here, Grant's claims plainly are arbitrable; they do much more "touch matters" that his Agreement covers.  Grant asserts employment claims, and (i) the Agreement is the document that *established* the employment relationship, and (ii) Tech Mahindra's decision to discharge Grant *terminated* the Agreement.  Grant's employment claims therefore necessarily "*relat[e]* to th[e] Agreement or the *obligations* arising there under." Ramesh Decl. ¶ 6, Exh. A, ¶ 20 at p.7.

The Eighth Circuit considered an arbitration clause like this one in *ING Financial Partners v. Johansen*, 446 F.3d 777 (8th Cir. 2006). Plaintiff asserted statutory discrimination, harassment and retaliation claims, but the defendant employer resisted arbitrability. Plaintiff previously had executed a Registered Representative Agreement ("RRA"), which called for arbitration of "[a]ny dispute, claim or controversy arising out of or relating to this Agreement, or the breach thereof." The question was whether the statutory claims asserted were arbitrable. The Eighth Circuit held that they were, citing "[t]he broadly worded 'any dispute' language used in the RRA's arbitration clause." *Id*. at 778–79.

That employer contended, however, that the arbitration agreement also invoked the rules of the National Association of Securities Dealers, which exclude from arbitration harassment and discrimination claims. The court held that the reference to the NASD Rules did not negate or limit the broad arbitration promise; the reference "merely sets forth the procedural rules under which the arbitration is to be conducted. It does not . . . undermine the agreement's clear intent to require that all employment-related disputes . . . be arbitrated." *Id*. at 780 (citation omitted). And even if there were any doubt about the matter, the court explained, "doubts about whether [the] arbitration clause should be construed to cover a particular dispute are generally resolved in favor of arbitration"; "[an] order to arbitrate should not be denied unless it may be said with positive assurance that [the] arbitration clause is not susceptible of [an] interpretation that covers [the] . . . dispute." *Id*. at 779, *citing Grizzle*, 424 F.3d at 800 *and Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001).

Another Eighth Circuit case, *Keymer v. Management Recruiters International, Inc.*, 169 F.3d 501 (8th Cir. 1999), reached a similar conclusion. Plaintiff sued over his discharge under the Age Discrimination in Employment Act, and the employer sought to compel arbitration. The

parties had entered into an agreement requiring arbitration of "all controversies, claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof." *Id*. at 503.  "The arbitration clause . . . is very broad," the court explained, and the ADEA claim asserted clearly fell within it. *Id*. at 505.[2]

Courts everywhere interpret broadly contractual language calling for arbitration of disputes "relating to" a contract.  Just last month, for example, the court did so in *Dahman v. Embassy of Qatar*, Civil Action No. 17-2628 (JEB), 2019 U.S. Dist. LEXIS 11865 (D.D.C. Jan. 25, 2019).  Plaintiff, an embassy accountant, sued under the ADEA over his discharge.  He had entered into a seven-page "Local Employment Contract" with a clause requiring arbitration of "any . . . dispute, controversy or claim arising out of or relating to this Local Employment Contract, or the breach . . . thereof." *Id*. at *6–7.  When the embassy sought to compel arbitration, plaintiff contended that the arbitration clause did not cover his statutory age-discrimination claim.  The court held that the arbitration clause required arbitration, not just of claims "arising under" the contract, but also those "relating to" the contract, and the ADEA discharge claim was "related." *Id*. at *13.  "The addition of the 'relating to' language reflects an intent [to arbitrate a] broader range of claims . . . ; otherwise, the language is superfluous." *Id*. at *14.  "Far from being a narrow mandate, the clause in Dahman's contract . . . has expansive reach," the court held. *Id*.  And even if there were any doubt about the matter, "there is a strong federal policy in favor of arbitration and 'any doubts concerning the scope of arbitrable issues

---

[2] In that case, the court nevertheless concluded that the dispute was not arbitrable, based on unusual additional contractual language not present here.  That arbitration clause contained an express exception for "disputes . . . regarding . . . terminat[ion of] this Agreement." *Keymer*, 169 F.3d at 503.  That exception applied to the discharge claim asserted, the court held, rendering nonarbitrable what otherwise would have been an arbitrable statutory claim. *Id*. at 504.

should be resolved in favor of arbitration.'" *Id*. at \*14–15, *quoting* (among other authorities) *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Numerous cases are to the same effect. *See, e.g., Webb v. Oaktree Med. Ctr., P.C.*, No. 3:18-cv-00924-JMC, 2018 U.S. Dist. Lexis 108185, at \*10–11 (D.S.C. June 28, 2018) (holding statutory pregnancy- and gender-discrimination claims to be arbitrable under a clause requiring arbitration of "[a]ny controversy, dispute or disagreement arising out of or relating to this Agreement, or the breach thereof"; "the language 'arising out of or relat[ing] to' constitutes a 'broad arbitration clause'"; the claims asserted "have a 'significant relationship' to the Agreement in that the Agreement forms the basis of [Plaintiff's] employment with Defendant, particularly because her claims relate to the circumstances in which her employment with Defendant was terminated"), *quoting Am. Recovery Corp. v. Computerized Thermal Imagining, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996); *Hull v. NCR Corp.*, 826 F. Supp. 303, 305 (E.D. Mo. 1993) ("In light of the broad arbitration provision in the Employment Contract (any 'claim arising out of or related to this contract') and because the FAA mandates that courts liberally construe the scope of arbitration agreements, the Court finds that the parties have agreed to arbitrate the [statutory discrimination] claims in this suit."); *Zeller-Landau v. Sterne Agee CRT, LLC*, Civil Action No. 17-3962, 2018 U.S. Dist. Lexis 3532, at \*9, \*14 n.8 (E.D. Pa. Jan. 9, 2018) (compelling arbitration of statutory discrimination claims; "Arbitration clauses that govern any disputes 'arising out of or relating to' the parties' agreement" are "broad in scope"; "To the extent that there is any ambiguity . . . , the presumption of arbitrability applies.") (citing numerous cases).

The instant case is just like all of these. Grant's asserted claims "relat[e] to [his] Agreement or the obligations arising there under," and hence are arbitrable.

**C.**   **This Court Should Order Grant To Arbitrate His Claims On An Individual Basis And Dismiss The Class Claims.**

Grant probably will contend that, if he is compelled to arbitrate, he should be permitted to assert class claims in arbitration.  He is incorrect, as shown below; this Court should order Grant to arbitrate individually.

**1.**   **Whether Grant's Agreement requires individual arbitration is a gateway question of arbitrability for this Court.**

Absent clear and unmistakable evidence indicating the parties intended otherwise, gateway questions of arbitrability are decided by the court.  *See, e.g.*, *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (courts will not assume that the parties agreed to arbitrate gateway matters "unless there is 'clea[r] and unmistakabl[e]' evidence" to that effect) (citation omitted).

In *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966 (8th Cir. 2017), the Eighth Circuit joined other circuits in holding that "the question of class arbitration belongs with the courts as a substantive question of arbitrability."  *Id*. at 972.  The Eighth Circuit reviewed what other circuits previously had held.  The Sixth Circuit first considered the issue in *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594 (6th Cir. 2013).  Citing the profound differences between a class action and individualized arbitration, the court held that "whether an arbitration agreement permits classwide arbitration is a gateway matter" presumptively "for judicial determination." *Id.* at 599 (citation omitted).  Plaintiff invoked the plurality opinion in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) (which would have assigned the question to the arbitrator), but the Sixth Circuit found that the plurality's reasoning succumbed to the Supreme Court's later teaching in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010), and *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

The Third Circuit agreed in *Opalinski v. Robert Half International Inc.*, 761 F.3d 326 (3d Cir. 2014). The court held that the availability of class arbitration was a gateway question of arbitrability for a court to decide. "Traditional individual arbitration and class arbitration are so distinct that a choice between the two goes, we believe, to the very type of controversy to be resolved." *Id.* at 334. The availability of class arbitration therefore presented a gateway question of arbitrability for the court. *Id.* Here again plaintiff relied on the *Bazzle* plurality, but the Third Circuit joined the Sixth in holding that the Supreme Court's "line of post-*Bazzle* opinions" rendered the plurality obsolete. *Id.* at 335.

The Fourth Circuit took up the issue in *Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867 (4th Cir. 2016). The trial court there had held "that . . . whether an arbitration clause permits class arbitration[] is procedural and therefore for the arbitrator." *Id.* at 873. "We disagree," the Fourth Circuit said. *Id.* The court declined to follow "the thin reed that is now *Bazzle*," *id.* at 877, and held "that whether an arbitration clause permits class arbitration is a gateway question of arbitrability for the court," *id.* at 873. "[T]he [Supreme] Court has highlighted the significant distinctions between class and bilateral arbitration, and these fundamental differences confirm that whether an agreement authorizes the former is a question of arbitrability," the court reasoned. *Id.* at 875. "The[] benefits [of arbitration] . . . are dramatically upended in class arbitration, which brings with it higher risks for defendants." *Id*. Court litigation affords appellate rights unavailable in arbitration. The possibility of arbitral error "is a cost that '[d]efendants are willing to accept' in bilateral arbitration[,] . . . [b]ut 'bet[ting] the company' without effective judicial review is a cost of class arbitration that defendants would not lightly accept." *Id*. (quoting *Concepcion*, 563 U.S. at 351). "It is not surprising then that those circuit courts to have considered the question have concluded that, 'unless the parties clearly and

unmistakably provide otherwise,' whether an arbitration agreement permits class arbitration is a

question of arbitrability for the court." 817 F.3d at 876 (quoting *Reed Elsevier*, 734 F.3d at 597–

99). "On remand," therefore, "the district court" — not an arbitrator — "shall determine whether

the parties agreed to class arbitration." 817 F.3d at 877.

The Third Circuit returned to the issue in *Chesapeake Appalachia, LLC v. Scout

Petroleum, LLC*, 809 F.3d 746 (3d Cir. 2016). That court previously had held, in *Opalinski*, that

the Supreme Court's later decisions eclipsed the reasoning of the *Bazzle* plurality, and that

whether an arbitration agreement permitted a class action was a gateway question of arbitrability

for the court. In *Chesapeake Appalachia*, however, plaintiff advanced a new argument: that

even if *Opalinski* was correctly decided, an agreement's incorporation by reference of the AAA

Rules delegated that question to the arbitrator, because the AAA Rules so state. The Third

Circuit rejected that argument. "[T]he availability of classwide arbitration constitutes a question

of arbitrability" for the court, because "it implicates 'whose claims the arbitrator may adjudicate'

as well as 'what types of controversies the arbitrator may decide.'" *Id*. at 756 (citations omitted).

The incorporation by reference of rules does not change that, the Third Circuit held. Plaintiff

faces "the onerous burden" of producing "clear[] and unmistakabl[e]" evidence "overcoming the

presumption" in favor of judicial resolution of the question of class arbitration, and the

incorporation of the AAA Rules does not suffice. *Id*. at 754, 758, 761. Plaintiff's rules-

incorporation argument rests on "a daisy-chain of cross-references," nothing clear and

unmistakable, the court held. *Id*. at 761, 763. Plaintiff argued that the agreement should be

construed against the defendant as its drafter, but the Third Circuit rejected that argument, too.

Any ambiguity in the agreement simply indicates that the "clear and unmistakable" test is not

met, the court concluded. *Id*. at 763.

The Eighth Circuit in *Catamaran* agreed with all these cases. "In [its] later cases, . . . the Supreme Court disavowed the *Bazzle* plurality's decision," the Eighth Circuit explained. 864 F.3d at 971. Plaintiff made the same argument that plaintiff had made in *Chesapeake Appalachia*: that the incorporation of the AAA Rules had the effect of delegating the question to the arbitrator. The Eighth Circuit rejected that argument, just as the Third Circuit had done. "To overcome the presumption [that the question belongs with the court], the parties must clearly and unmistakably delegate the question to an arbitrator," and "[i]ncorporation of AAA Rules by reference is insufficient evidence that the parties intended for an arbitrator to decide the substantive question of class arbitration." *Id*. at 972, 973.

It therefore is a question for this Court (not for the arbitrator) whether Grant's Agreement permits a class action.

### 2.     Grant must arbitrate individually, not as a class representative.

In *Concepcion*, 563 U.S. 333, the Supreme Court held that federal law preempted a California doctrine that deemed unenforceable a class-action waiver in an arbitration agreement. That state-law rule "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" and thus "is preempted by the FAA." *Id.* at 352 (citation omitted). The reason is that class arbitration "sacrifices the principal advantage of arbitration," is "poorly suited to the higher stakes of class litigation," forces defendants to "bet the company with no effective means of review," and is "not arbitration as envisioned by the FAA." *Id.* at 348, 350, 351. The Supreme Court held that California must enforce arbitration agreements even if the claimant must arbitrate claims individually, instead of on a class basis.

*Concepcion* dealt with an *express* class-action waiver, but *Stolt-Nielsen S.A.*, 559 U.S. 662, explained how courts should deal with arbitration agreements, like the one at issue here, that are *silent* on the issue. The Supreme Court held that when an arbitration agreement is governed

by the FAA, classwide arbitration is forbidden unless the parties have affirmatively agreed to it. The "differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with . . . the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id.* at 687. In individual arbitration, "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Id.* at 685. The "shift from bilateral arbitration to class-action arbitration" brings about "fundamental changes," because an arbitrator "no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties," *id.* at 686, and yet "the scope of judicial review is much more limited," *id.* at 687. Because the "relative benefits of class-action arbitration are much less assured," there is "reason to doubt the parties' mutual consent to resolve disputes through class-wide arbitration" where an agreement does not *specifically* authorize it. *Id.* at 685–86. Because "class-action arbitration changes the nature of arbitration to such a degree," courts may *not* "presume[]" such consent from "mere silence on the issue of class-action arbitration" language, or infer "[a]n implicit agreement to authorize class-action arbitration . . . from the fact of the parties' agreement to arbitrate." *Id.* at 685, 687. As a matter of substantive federal law, "the FAA requires more." *Id.* at 687.

An agreement to arbitrate on an individual basis — termed "bilateral arbitration" — is the type of informal, expedient proceeding "envisioned by the FAA." *Concepcion*, 563 U.S. at 348, 351. As the Supreme Court has explained on multiple occasions, in bilateral arbitration the "'parties forgo the procedural rigor and appellate review of the courts in order to realize the

benefits of private dispute resolution,'" including "'lower costs'" and "'greater efficiency and speed.'" *Id.* at 348 (quoting *Stolt-Nielsen*, 559 U.S. at 685). The "virtues Congress originally saw in arbitration" are "its speed and simplicity and inexpensiveness." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018). Accordingly, "one of arbitration's fundamental attributes" is its "individualized nature." *Id.* at 1622.

"Class arbitration," by contrast, is "not arbitration as envisioned by the FAA" and "lacks its benefits." *Concepcion*, 563 U.S. at 350–51 (emphasis added). That is because "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration — its informality — and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* at 348; *accord Epic Sys.*, 138 S. Ct. at 1623.

The Eighth Circuit, even before *Stolt-Nielsen*, refused to order class arbitration when the arbitration clause made "no provision for arbitration as a class." *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728–29 (8th Cir. 2001). Thereafter, the Sixth Circuit has three times held similarly. First, in *Reed Elsevier*, the court declined to infer an agreement to class arbitration from language providing for arbitration of "any controversy, claim or counterclaim . . . arising out of or in connection with this Order." 734 F.3d. at 599. "The principal reason to conclude that this arbitration clause does not authorize classwide arbitration," the court began, "is that the clause nowhere mentions it." *Id.* And a "second reason," the court continued, "is that the clause limits its scope to claims 'arising from or in connection with this Order,' as opposed to other customers' orders." *Id.* The court rejected as irrelevant the plaintiffs argument "that the agreement does not expressly exclude the possibility of classwide arbitration," explaining that "the agreement does not include it either" — explicitly or implicitly — "which is

what the agreement needs to do in order for us to force that momentous consequence upon the
parties here." *Id.* at 600.

A year later, the Sixth Circuit reached the same conclusion in construing an employment
agreement that called for arbitration of "[a]ny Claim arising out of or relating to this
Agreement." *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 393 (6th Cir. 2014).  The court
explained:  "As was . . . the case in *Reed Elsevier*, here the parties' arbitration clause nowhere
mentions classwide arbitration.  We therefore conclude that the arbitration clause does not
authorize classwide arbitration, and hold that the plaintiffs must proceed individually." *Id.* at
398–99 (citation omitted).

Most recently, in *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 547 (6th Cir. 2016),
another employment case, the court discerned no agreement to class arbitration in language
providing for the arbitration of "any dispute arising out of or in connection with any aspect of
this Agreement" and providing that "all substantive rights and remedies" shall be available in
arbitration.  The court explained that this language constituted merely "silen[ce] on the
availability of classwide arbitration, and we may not presume from 'mere silence' that the parties
consented to it." *Id.* at 553 (quoting *Stolt-Nielsen*, 559 U.S. at 687).  The court reasoned that
class arbitration could not be inferred because "the clause limits its scope to claims 'arising out
of or in connection with any aspect of this Agreement,' as opposed to other employees' and/or
potential employees' agreements." *Id.*

The Third Circuit also has refused to infer consent to class arbitration from the parties'
broad agreement to arbitrate "[a]ny dispute or claim arising out of or relating to Employee's
employment . . . or any provision of this Agreement," *Opalinski v. Robert Half Int'l Inc.*, 677 F.
App'x 738, 739, 742 (3d Cir.), *cert. denied*, 138 S. Ct. 378 (2017) — even though the arbitration

-12-

agreement required arbitration "to the fullest extent permitted by law." *Opalinski v. Robert Half Int'l, Inc.*, Civil Action No. 10-2069, 2015 WL 7306420, at *1 (D.N.J. Nov. 18, 2015), *aff'd*, 677 F. App'x 738 (3d Cir.), *cert. denied*, 138 S. Ct. 378 (2017). The Third Circuit found class arbitration fundamentally incompatible with *Stolt-Nielsen*: "[T]he Supreme Court was clear . . . that '[a]n implicit agreement to authorize class-action arbitration' cannot be inferred 'solely from the fact of the parties' agreement to arbitrate.'" 677 F. App'x at 742 (quoting *Stolt-Nielsen*, 559 U.S. at 685). The court explained that the "problem" with the plaintiffs' reliance on broad "any dispute or claim" language is twofold: (1) it "misses a critical point" that the agreement refers to claims that "relate to the particular employee's employment, not any employee's employment"; and (2) it "shows only the parties' general intent to arbitrate their disputes," which cannot support an inference of "an intent to arbitrate class claims." *Id.*

Here, the parties' Agreement does not authorize class actions; if anything, it reveals the parties' intent to limit arbitration to Grant's own claims. Its scope is explicitly limited to "[a]ny controversy or dispute relating to *this* Agreement" — not the agreements or circumstances of other employees. Ramesh Decl. ¶ 6, Exh. A, ¶ 20 at p.7 (emphasis added). The Agreement was made by "the Parties" — Grant and Tech Mahindra — no one else. *Id.*, Exh. A, p. 1. "Th[e] Agreement is personal in its nature to [Grant]. . . ." *Id.*, ¶ 9 at p. 3. The Agreement therefore cannot be construed to cover claims pertaining to any other employee or employees. This Court therefore should order Grant to arbitrate his claims individually.[3]

---

[3] The issue currently is before the Supreme Court in *Lamps Plus, Inc. v. Varela* (No. 17-988). The Ninth Circuit in a 2-1 unpublished per curiam decision had construed an arbitration agreement that was silent on the issue of class actions to allow them. *Varela v. Lamps Plus, Inc.*, 701 F. App'x 670 (9th Cir. 2017). The Supreme Court granted certiorari and heard oral argument on October 2, 2018. A decision in that case should be imminent, so this Court may wish to defer consideration of this motion until the Supreme Court rules.

## III.   <u>CONCLUSION</u>

Grant promised to arbitrate any disputes he might have with Tech Mahindra.

Accordingly, this Court should order Grant to submit his claims to individual arbitration pursuant

to his Agreement.[4]

Dated: February 26, 2019                 Respectfully submitted,

By: _____
        Kenneth W. Gage
        (*pro hac vice*)
        Brian M. Hayes
        (*pro hac vice*)
        Paul Hastings LLP
        200 Park Avenue
        New York, New York 10166
        Telephone: 1(212) 318-6000
        Facsimile: 1(212) 319-4090
        kennethgage@paulhastings.com
        brianhayes@paulhastings.com

        Leslie L. Abbott
        (*pro hac vice*)
        Paul Hastings LLP
        515 South Flower Street
        Twenty-Fifth Floor
        Los Angeles, California 90071
        Telephone: 1(213) 683-6000
        Facsimile: 1(213) 996-3310
        leslieabbott@paulhastings.com

        Alex J. Maturi
        (*pro hac vice*)
        Paul Hastings LLP
        71 South Wacker Drive, Suite 4500
        Chicago, Illinois 60606
        Telephone: 1(312) 499-6000
        Facsimile: 1(312) 499-6176
        alexmaturi@paulhastings.com

        Courtney E. Ward-Reichard
        Nilan Johnson Lewis PA
        Canadian Pacific Plaza
        120 South Sixth Street, Suite 400

---

[4] Grant's arbitration clause specified venue in New York City. Ramesh Decl. ¶ 6, Exh. A, ¶ 20 at p. 7. Tech Mahindra is prepared to waive that venue provision if Grant would prefer that his individual arbitration take place in North Dakota.

Minneapolis, Minnesota  55402
Telephone:  (612) 305-7539
cward@nilanjohnson.com

*Attorneys for Defendant*
*Tech Mahindra (Americas), Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 26, 2019, a copy of the foregoing Motion to Compel
Arbitration, was filed electronically and served by mail on anyone unable to accept electronic
filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's
electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the
Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

           Kenneth W. Gage