<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LEE WILLIAMS, individually and in his representative capacity,<br><br>Plaintiff,<br><br>v.<br><br>TECH MAHINDRA (AMERICAS), Inc.,<br><br>Defendant. | Case No. 3:20-cv-04684 (BRM) (LHG)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss (ECF No. 6)[1] filed by Defendant Tech Mahindra (Americas), Inc. ("TMA") seeking to dismiss Plaintiff Lee Williams ("Plaintiff") Complaint brought on behalf of Plaintiff and on behalf of all others similarly situated (the "Complaint") (ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion. (ECF No. 9.) Pursuant to Federal Rule of Civil Procedure 78(b), this Court did not hear oral argument. For the reasons set forth herein and for good cause shown, TMA's Motion to Dismiss (ECF No. 6) is **GRANTED**.

**I.   BACKGROUND**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document

---

[1] The Court notes ECF No. 6 is TMA's memorandum in support of its motion to dismiss. (*See* ECF No. 6.) ECF No. 5 provides notice of TMA's motion to dismiss. (*See* ECF No. 5.)

*integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This matter stems from Plaintiff's employment at TMA, a wholly-owned subsidiary of Tech Mahindra, Ltd., an information technology ("IT") company located in India. (ECF No. 1 ¶ 2.) TMA, a company incorporated in New Jersey with its principal place of business in Freehold, New Jersey, provides IT outsourcing and consulting services to clients within the United States and has approximately 5,100 employees. (*Id.* ¶¶ 2, 4.) According to the Complaint, TMA hires a "grossly disproportionate" number of South Asian and Indian employees due to "TMA's intentional pattern and practice of employment discrimination against individuals who are not South Asian, including discrimination in hiring, staffing, promotion, and termination decisions." (*Id.*)[2] Plaintiff, "is of Caucasian Race and American national origin," resides in Florida, and was employed by TMA in Columbus, Ohio at all relevant times. (*Id.* ¶ 4.) TMA operates under a "general policy of discrimination in favor of South Asians and against individuals who are not South Asian." (*Id.* ¶ 12.) This "general policy of discrimination" is "manifested" through TMA's practice of securing H-1B visas (and other visas) for South Asian workers located overseas (*id.* ¶¶ 13–15), preferential treatment to South Asian applicants located in the United States over non-South Asian applicants (*id.* ¶ 16), preferential treatment to South Asians over non-South Asians in making promotion decisions (*id.* ¶ 17), and finally, due to TMA's "discriminatory preference for South

---

[2] The Complaint further alleges "[w]hile roughly 1-2% of the United States population, and roughly 12% of the relevant labor market, is South Asian and Indian, approximately 90% (or more) of TMA's United States-based workforce is South Asian and Indian." (*Id.* ¶ 2.)

2

Asians, TMA terminates non-South Asians at disproportionately high rates, compared to South Asians." (*Id.* ¶ 18.)[3]

Plaintiff is a "highly skilled senior technology sales executive with over twenty years of professional experience," who holds a B.S. in Business Management from Indiana Wesleyan University. (*Id.* ¶ 20.) He specializes in new logo acquisition, account management, and team leadership, and sells both technology and services to clients. (*Id.*) He has held a variety of director and vice-president level sales roles throughout his career. (*Id.*) Plaintiff was hired by TMA for a Regional Manager/Senior Director of Business Development sales role based out of Columbus, Ohio in May 2014. (*Id.*) He began his employment on June 2, 2014. (*Id.*) In this position, Plaintiff was a "hunter" responsible for generating business and sales from new banking clients in the Midwest and developing relationships with these new accounts. (*Id.* ¶ 21.) Plaintiff was one of only two non-South Asian employees out of approximately eight employees in the new "hunter fields sales group." (*Id.* ¶ 22.) He reported to a Manish Sharma ("Sharma"), who "[l]ike the vast majority of TMA's managerial and supervisory staff," was "of South Asian race." (*Id.*)[4] Shortly after joining TMA, Plaintiff was asked to enter his professional banking contacts into "TMA's Salesforce CRM system," to which Plaintiff complied and continued to update his contacts in the Salesforce CRM system throughout his tenure with TMA. (*Id.* ¶ 23.) Due to TMA's poor business relationship with various banking clients, "it often took [] months" to coordinate "meetings with

---

[3] The Complaint also alleges due to "TMA's preference for filling positions with South Asians, non-South Asians are disproportionately relegated to the bench and [are] disproportionately unable to locate new assignments. On information and belief, individuals who remain on the bench for too long are terminated." (*Id.* ¶ 18.)

[4] Plaintiff attended three regional meetings for TMA in New Jersey and Georgia. (*Id.* ¶ 25.) Of the approximately "90 to 100 attendees" at the regional meetings, "the vast majority of individuals (over 90%) were of South Asian. Hindi was often spoken socially at these meetings to the exclusion of [Plaintiff], a native English speaker." (*Id.*)

3

these accounts and deals were lost to competitors due to TMA's poor history with the accounts." (*Id.* ¶ 24.) When Plaintiff asked for help in overcoming these problems, his requests for help went unanswered. (*Id.*) Despite these challenges, Plaintiff "performed well" and successfully identified opportunities for future sales which included "four opportunities with PNC totaling over $3 million in potential sales revenue." (*Id.* ¶ 26.) In February 2015, Plaintiff was provided with a small raise by TMA for his efforts, however, because of TMA's "pattern or practice of discrimination it never promoted" Plaintiff. (*Id.*) In June 2015, Sharma informed Plaintiff he was not meeting his sales goals and would be placed on a "Performance Improvement Plan" ("PIP") effective June 15, 2015. (*Id.* ¶ 27.) Under the PIP, TMA set "unreasonable revenue goals" for Plaintiff that were "unattainable" due to TMA's poor working relationship with the accounts in Plaintiff's territory. (*Id.*) TMA terminated Plaintiff on August 19, 2015. (*Id.* ¶ 28.) On September 7, 2015, Plaintiff "curiously" received a letter from TMA's Group Manager of Human Resources noting his "resignation ha[d] been accepted" and that he was "relieved from the services of [TMA] effective . . . 19 August 2015." (*Id.*) Plaintiff did not resign, but rather he was terminated "because of TMA's pattern or practice of discrimination." (*Id.*) On April 21, 2020, Plaintiff filed a one-count putative class action Complaint alleging disparate treatment on the basis of race under 42 U.S.C. § 1981. (ECF No. 1.) On June 9, 2020, TMA filed a motion to dismiss. (ECF No. 5.) On July 13, 2020, Plaintiff filed an opposition. (ECF No. 9.) On July 27, 2020, TMA filed a reply. (ECF No. 10.)

## II.     LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion

to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

5

However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### III. DECISION

TMA argues Plaintiff's § 1981 claim fails for three main reasons. First, Plaintiff lacks standing to pursue a claim for hiring or staffing discrimination, and his putative class claim should be dismissed for the same reason. Second, the Complaint must be dismissed as it is time-barred. Third, the Complaint lacks sufficient factual allegations to plausibly support a § 1981 claim. Plaintiff opposes arguing he has standing to assert hiring and staffing claims and TMA's argument is a premature challenge to class certification, Plaintiff's claims are not time-barred, and Plaintiff has adequately stated a claim for disparate treatment. The Court will address each argument in turn.

**A.     Standing**

TMA argues Plaintiff lacks Article III standing to pursue a claim of hiring or staffing discrimination because he was, in fact, hired by TMA. (ECF No. 6 at 15.) Specifically, TMA argues:

> Plaintiff admits that he *was* hired and worked for TMA for more than one year, from June 2, 2014 to August 19, 2015. Moreover, Williams was in a sales role where he was not subject to the staffing procedures that he alleges left non-South Asian customer service employees "on the bench" between engagements for longer periods than South Asian employees spent on the bench. Because Williams has not experienced an injury in fact with respect to his initial hiring or his staffing with TMA, his hiring and staffing claims must be dismissed for lack of standing.

(*Id.* at 15.)

Plaintiff argues he has standing to pursue a claim of hiring or staffing discrimination because "TMA operates under a comprehensive, nationwide discriminatory scheme to achieve its discriminatory goal– the grossly disproportionate employment and advancement of South Asians in U.S. positions." (ECF No. 9 at 19.) Indeed, "[b]ecause this scheme infects all of TMA's employment practices, both non-South Asian applicants and employees—including Plaintiff—are harmed." (*Id.*)[5] The Court finds Plaintiff has standing.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*,

---

[5] Plaintiff argues "TMA does not dispute that Plaintiff has standing to pursue failure to promote and termination claims, nor could it," because Plaintiff has properly alleged "TMA failed to promote him and terminated his employment because of its pattern and practice of discrimination against non-South Asians[.]"(*Id.* at 12.)

7

757 F.3d 347, 360 (3d Cir. 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)). A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) providing that the "issue of standing is jurisdictional"); *Kaufman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) (noting that we "must not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing"). "Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine*, 486 F.3d at 810 (citing *Warth v. Seldin*, 422 U.S. 490 (1975)); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003). Nevertheless, on a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). However, "*general factual* allegations of injury resulting from the defendant's conduct *may suffice*." *Lujan*, 504 U.S. at 561 (emphasis added).

Article III "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

Contrary to TMA's argument, Plaintiff has established he has standing to pursue claims against TMA. The Complaint asserts he suffered an injury in fact that is fairly traceable to the challenged conduct of TMA. Specifically, the Complaint alleges after Plaintiff was hired he was placed on a PIP despite "performing well," and was required to meet "unreasonable revenue goals," and was, among other things, never promoted because of "TMA's pattern or practice of discrimination," by favoring members of the South Asian Race or Indian national origin. (ECF No. 1 ¶¶ 26–27.) In other words, Plaintiff alleges he was the victim of TMA's discriminatory conduct. Therefore, the Court finds Plaintiff sufficiently pled he suffered an injury in fact. *Patel v. Crist*, Civ. A. No. 19-9232, 2020 WL 64618, at *4 (D.N.J. Jan. 7, 2020); *Morgan v. Martinez*, Civ. A. No. 3:14-02468, 2015 WL 2233214, at *3 (D.N.J. May 12, 2015) (providing that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim") (citation omitted). Furthermore, Plaintiff's injuries are likely to be redressed by a favorable judicial decision of this Court. Therefore, Plaintiff has established Article III standing: that he suffered an injury in fact, that is fairly traceable to the challenged conduct of TMA, and that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547. Accordingly, TMA's Motion to Dismiss based on lack of standing is **DENIED**.

### B. Whether Plaintiff's Individual and Class Claims are Time-Barred under *American Pipe*

Both parties agree § 1981 does not contain a statute of limitations. (*See* ECF No. 6 at 17; ECF No. 9 at 20.) Depending on the character of the § 1981 claim asserted, however, the statute of limitations here is either four years under 28 U.S.C. § 1658 or it is borrowed from the personal injury statute of limitations of the forum state. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369,

371 (2004). Therefore, there are two possible statutes of limitations: two years or four years. The Court will assume the statute of limitations is four years as the four-year statute of limitations pursuant to 28 U.S.C. § 1658 applies to claims for wrongful termination and failure to promote. *Donnelley*, 541 U.S. at 383.

Plaintiff's employment was terminated on August 19, 2015. Therefore, the time for him to bring a claim for hiring discrimination must have been brought on or before August 19, 2019. TMA argues, in anticipation of Plaintiff's opposition, that tolling derived from *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) will not save Plaintiff's claim. (ECF No. 6 at 19.) Plaintiff does not dispute his claim was not brought within the applicable statute of limitations but argues the statute of limitations was tolled during the pendency of a motion to amend the class action complaint in *Grant v. Tech Mahindra (Americas), Inc.*, Civ. A. No. 3:18-171 (D.N.D. 2019) ("*Grant*") to add Plaintiff as a class representative and to join his claims. (ECF No. 9 at 21.)[6] TMA argues Plaintiff is not entitled to the benefit of tolling because, among other things, Plaintiff's claims are different than those brought by the plaintiff in *Grant*, and Plaintiff was not a member of the putative class in *Grant*. (ECF No. 6 at 19.) Further, even if Plaintiff's claims are tolled, he can at most only pursue an individual claim. (*Id.* at 20.) In order to address the parties' arguments, the Court must first discuss *American Pipe* tolling.

    i. ***American Pipe* tolling**

The Supreme Court has long held a timely class action tolls the claims of all putative class members. *American Pipe*, 414 U.S. at 552–53; *see Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983). The Supreme Court has given two main reasons for its holding. First, tolling is

---

[6] Absent any tolling, Plaintiff's claim would indisputably be time-barred. In fact, Plaintiff concedes this putative class action was filed at least 246 days after the statute of limitations ran. (*See* ECF No. 9 at 21.)

needed to avoid duplicative lawsuits. *American Pipe*, 414 U.S. at 551, 553–54. Putative class members should be able to wait on the sidelines pending class certification, hoping for a victory in the class action. Without tolling, they might try to protect their claims by flooding courts with individual lawsuits—"precisely the multiplicity of activity which Rule 23 was designed to avoid." *Id.* at 551. Second, tolling is fair to both sides. *Id.* at 554. Statutes of limitations encourage plaintiffs to not sit on their claims and to sue promptly thus preventing surprises to defendants. "But putative class members reasonably expect the class action to protect their claims. And the class action gives defendants ample notice." *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 709 (3d Cir. 2019). The Supreme Court has since clarified that

> *American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails. But *American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations.

*China Agritech, Inc. v. Resh*, ––– U.S. ––––, 138 S. Ct. 1800, 1804 (2018). Indeed, in *China Agritech*, the Supreme Court held *American Pipe* does not toll the claims of "a putative class representative . . . who brings his claims as a new class action after the statute of limitations has expired," reasoning that "the 'efficiency and economy of litigation' [rationales] that support tolling of individual claims . . . do not support maintenance of untimely successive class actions." *Id.* at 1806 (quoting *Am. Pipe*, 414 U.S. at 553); *Schultz v. Midland Credit Mgmt., Inc.*, Civ. A. No. 16-4415, 2019 WL 2083302, at *9 (D.N.J. May 13, 2019). The question now is whether Plaintiff would have been a member of the *Grant* class, such that this Court should toll the limitations period under *American Pipe*.

### ii. *Grant* Class Membership

As discussed, *American Pipe* "tolls the applicable statute of limitations for putative class members," *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 609 (3d Cir. 2018), and does not extend to plaintiffs who were not part of the class, or who "cease[d] to be part of the class." *Berkery v. Verizon Commc'ns Inc.*, 658 F. App'x 172, 174–75 (3d Cir. 2016). In *Grant*, plaintiff Rodrick Grant, an "American [of] national origin and African American race," filed a complaint in the District of North Dakota ("*Grant* Complaint") on behalf of himself and "a class of similarly situated individuals to remedy pervasive, ongoing race and national origin discrimination by Defendant Tech Mahindra (Americas), Inc." (ECF No. 9-4 at 2.) The *Grant* Complaint contained the following class definition: "All persons who are not of South Asian race or Indian national origin who sought a position with (or within) TMA and were not hired, who sought a promotion within TMA and were not promoted, and/or who TMA involuntarily terminated." (*Id.* at 17.) TMA argues "[g]iven the differences in his and Grant's roles at TMA, [Plaintiff] would not have been a member of the class in *Grant* even if that case had been certified as a class action," because "Grant and [Plaintiff] had very different roles and experiences at TMA, a fact that is clear from the face of both complaints." (ECF No. 6 at 20.) The Court finds, at this juncture, that Plaintiff would have been a member of the class in *Grant*. Indeed, looking to the Complaint, Plaintiff alleges, he a member of the "Caucasian Race and American national origin," was, among other things, never promoted because of "TMA's pattern or practice of discrimination," by favoring members of the South Asian Race or Indian national origin. (*See* ECF No. 1 ¶¶ 11–12, 26.) Plaintiff, therefore, is entitled to *American Pipe* tolling.

The Court now turns briefly to whether *American Pipe* tolling applies to successive class actions and finds it does not. *American Pipe* created a generous tolling rule that applies broadly to

protect putative class members in pending class actions. Yet the rule is not without limits. As the Supreme Court clarified in *China Agritech*, tolling does not apply to successive class actions under any circumstances. *Weitzner*, 909 F.3d at 614 (providing that "*China Agritech* precludes the application of *American Pipe* tolling to such successive class claims," and therefore "plaintiffs' class claims are not subject to tolling").

Accordingly, TMA's Motion to Dismiss Plaintiff's § 1981 claim as time-barred is **DENIED** with respect to Plaintiff's individual claim and **GRANTED** with respect to Plaintiff's class action claim.

### C. Merits of Plaintiff's § 1981 Claim

TMA contends Plaintiff's claim under § 1981 should be dismissed because Plaintiff has not made any plausible allegations of race discrimination. (ECF No. 6 at 12.) In essence, TMA argues Plaintiff has crafted conclusory accusations that are unsupported by any specific factual allegations and have failed to "nudge[] his claims of invidious discrimination across the line from conceivable to plausible." (*Id.* at 14–15.) Plaintiff argues he has sufficiently alleged TMA engaged in a pattern and practice of racial discrimination against non-South Asians. (ECF No. 9 at 14.)

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). In order to state a claim under § 1981, a plaintiff must allege facts in support of the following elements: "(1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more

13

of the activities enumerated in the statute[,] which includes the right to make and enforce contracts . . . ." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (citations omitted). Of note, "[a]ll races can seek relief under the statute." *Shine v. TD Bank Fin. Grp.*, Civ. A. No. 09-4377, 2010 WL 2771773, at *1 (D.N.J. July 12, 2010) (permitting plaintiff who identified as "a Caucasian male of Irish and Polish descent" to proceed with certain § 1981 claims).

Critically, and both parties are correct to note, the Supreme Court recently clarified, "[t]o prevail, a [§ 1981] plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered loss of his legally protected rights." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (Mar. 23, 2020); *see* ECF No. 6 at 12.[7] In other words, a successful § 1981 plaintiff must plausibly allege the defendant's discriminatory intent was a "but-for" cause of an actionable adverse employment action or hostile environment. *Id.*; *see Rubert v. King*, Civ. A. No. 19-2781, 2020 WL 5751513, at *6 (S.D.N.Y. Sept. 25, 2020). Moreover, the Supreme Court has also clarified *McDonnell Douglas* has no bearing on the "causation standards" for discrimination claims. *Comcast*, 140 S. Ct. at 1019. Rather, the *McDonnell Douglas* framework is "a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination." *Id.* (citations omitted). Indeed, irrespective of the *McDonnell Douglas* framework, a plaintiff alleging a § 1981 discrimination claim must "initially plead and ultimately prove that, but for [his] race, [he] would not have suffered the loss of legally protected right." *Id.*; *see Simmons v. Triton Elevator, LLC*, Civ. A. No. 3:19-1206, 2020 WL 7770245, at *3 (N.D. Tex.

---

[7] The Court notes the causation standards for Title VII and § 1981 are different. In *Comcast*, the Supreme Court held that to prevail on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." 140 S. Ct. at 1019. For Title VII, however, a plaintiff may prove discrimination by showing that race was a "motivating factor" in the employer's adverse employment action. *Id.* at 1017.

Dec. 30, 2020). Stated differently, "*McDonnell Douglas* can provide no basis for allowing a complaint to survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim." *Comcast*, 140 S. Ct. at 1019.

Against this backdrop, the Court does not find the Complaint contains sufficient factual matter to state a claim that is plausible on its face under the but-for causation standard. *Id.* True, Plaintiff has alleged, among other things, that his termination was an actionable adverse employment action and termination does qualify as an adverse employment action. *See Dudhi v. Temple Health Oaks Lung Ctr.*, Civ. A. No. 20-1720, 2020 WL 7040970, at *2 (3d Cir. Dec. 1, 2020); *Long v. Leggett & Platt, Inc.*, Civ. A. No. 11604907, 2020 WL 4333776, at *5 (D.N.J. July 28, 2020). However, Plaintiff fails to provide non-conclusory allegations that plausibly suggest his race, national origin, or a relevant protected activity, was a "but-for" cause of his termination or lack of promotion.[8] Plaintiff can point to no racially discriminatory statements or conduct by TMA, his supervisors, or anyone conceivably involved in the decision to fire him or refuse to promote him. Rather, Plaintiff simply (and conclusory) alleges because of "TMA's pattern or practice of discrimination, it never promoted [him]" and TMA "terminated [Plaintiff] because of TMA's pattern or practice of discrimination." (ECF No. 1 ¶¶ 26, 28.) These are boilerplate assertions unsupported by specific facts. *See Holmes v. Fed Ex*, 556 F. App'x 150, 151 (3d Cir. 2014); *Rodriguez v. Stanley*, Civ. A. No. 19-9104, 2020 WL 7338221, at *6 (D.N.J. Dec. 14, 2020). Plaintiff has failed to show racial discrimination was a but-for cause of TMA's decision to terminate or refuse to promote Plaintiff. Therefore, Plaintiff has failed to state a plausible claim of intentional discrimination based on Plaintiff's race.

---

[8] Nowhere in the Complaint does Plaintiff allege he sought or was refused a promotion. He simply alleges TMA "never promoted" him. (ECF No. 1 ¶ 26.)

Accordingly, TMA's Motion to Dismiss Plaintiff's § 1981 claim is **GRANTED**.

IV. CONCLUSION

For the reasons set forth above, TMA's Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.


Dated: January 29, 2021

*/s/ Brian R. Martinotti*
**BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**