<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LEE WILLIAMS, *individually and in his representative capacity*,<br><br>        Plaintiff,<br><br>        v.<br><br>TECH MAHINDRA (AMERICAS), Inc.,<br><br>        Defendant. | Civil Action No. 20-4684 (MAS) (JTQ)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendant Tech Mahindra (Americas), Inc.'s ("Defendant" or "TMA") Second Renewed Motion to Dismiss (ECF No. 58) Plaintiff Lee Willams's ("Plaintiff" or "Williams") Complaint (ECF No. 1). Plaintiff opposed (ECF No. 62), and Defendant replied (ECF No. 65). After careful consideration of the parties' submissions, the Court decides TMA's motion without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, TMA's Motion to Dismiss is granted.

**I.    <u>BACKGROUND</u>**[1]

**A.    Factual Background**

In this putative class action, Plaintiff brings claims under 42 U.S.C. § 1981 ("Section 1981") against his former employer, TMA, an information technology ("IT") company located in India. (*See* Compl. ¶ 2, ECF No. 1.)

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

### 1. *William's History with TMA*

Plaintiff is "of Caucasian [r]ace and American national origin." (*Id.* ¶ 4.) He is a highly skilled technology sales executive who was hired by TMA in May 2014 for a Regional Manager / Senior Director of Business Development sales role to work out of Columbus, Ohio. (*Id.* ¶¶ 20-21.) In this role, Plaintiff was responsible for generating business and sales from new banking clients. (*Id.* ¶ 21.) During the interview process, TMA informed Plaintiff that it had a good relationship with potential clients in his territory for him to capitalize on, and Plaintiff confirmed that he had contacts within certain accounts that he could call on during his career. (*Id.* ¶ 21.) On June 2, 2014, Plaintiff began the role, working in a sales team of eight employees where Plaintiff was one of two employees not of South Asian descent. (*Id.* ¶ 22.) Plaintiff alleges that the "vast majority" of TMA's managerial and supervisory staff was of South Asian descent. (*Id.*)

After joining TMA, Plaintiff began reaching out to clients and learned that TMA did not have the positive working reputation in the area that it had presented. (*Id.* ¶ 24.) As a result, Plaintiff had difficulty setting up client meetings and lost business to competitors. (*Id.*) Plaintiff reported these issues to his manager and asked for assistance, but his requests went unanswered. (*Id.*) Despite these challenges, Plaintiff reports he performed well in his role, successfully identifying opportunities for future sales. (*Id.* ¶ 26.) In February 2015, TMA gave Plaintiff a "small" raise, but Plaintiff alleges that TMA did not give him a promotion due to a pattern or practice of discrimination. (*Id.*) While Plaintiff was employed at TMA, he attended regional meetings that were attended by project managers, subject matter experts, and salespersons, and over ninety percent of the individuals in attendance were South Asian. (*Id.* ¶ 25.) "Hindi was often spoken socially at these meetings, to the exclusion of . . . Williams, a native English speaker." (*Id.*)

In June 2015, Plaintiff was informed that he was not meeting his sales goals and would be placed on a sixty-day Performance Improvement Plan ("PIP") effective June 15, 2015. (*Id.* ¶ 27.) During that period, TMA set unreasonable revenue goals for Plaintiff considering TMA's relationships in the area. (*Id.*) Plaintiff alleges that the PIP was pretextual and designed for him to fail so that TMA could terminate his employment, which TMA did on August 19, 2015. (*Id.* ¶¶ 27-28.)

2.      ***TMA's Business Model***

TMA is incorporated in New Jersey and contracts with companies in the United States to provide IT-related services. (*Id.* ¶¶ 8, 11.) TMA has about twenty-five offices and employs 5,100 employees in the United States. (*Id.* ¶ 10.) Plaintiff alleges that TMA operates under a "general policy of discrimination" that favors South Asians in "hiring, staffing, promotion[s], and termination decisions." (*Id.* ¶ 12.) Plaintiff further alleges that "[w]hile only about 12% of the relevant labor market (the IT industry) is South Asian, approximately 90% (or more) of TMA's United States-based workforce is South Asian, as is, the vast majority (if not all) of its managerial and supervisory-level staff." (*Id.* ¶ 19.)

Plaintiff alleges that this discrimination is exemplified in TMA's practice of securing a surplus of H-1B visas for South Asian workers overseas to staff positions in the United States. (*Id.* ¶¶ 13-14.) According to Plaintiff, TMA submits visa petitions for more positions than are available in the United States to maximize the number of visas it receives to fulfill its employment preferences for South Asians. (*Id.* ¶ 14.) In 2017, TMA obtained 4,931 approved H-1B petitions; in 2016, 3,344 approved H-1B petitions; and in 2015, 2,553 approved H-1B petitions. (*Id.*) According to Plaintiff, "[g]iven that TMA employs only 5,100 employees in the U.S., TMA could not possibly have positions for each of the thousands of individuals for whom it secures a visa

each year." (*Id.*) Substantially all the individuals that TMA secures visas for are South Asians. (*Id.* ¶ 15.) They are given preference for hiring and promotions in the United States, and TMA terminates non-South Asians to open and fill those positions with South Asian workers. (*Id.* ¶¶ 15-18.)

### B.    Procedural History

#### 1.    Grant Class Action

As a non-South Asian who was terminated by TMA, Plaintiff was a member of a putative class action filed in the United States District Court for the District of North Dakota on August 10, 2018 (the "Grant Action"), against TMA claiming racial discrimination. *See Grant v. Tech Mahindra (Americas), Inc.*, No. 18-171, 2019 WL 7865165, at *1 (D.N.D. Dec. 5, 2019). The lead plaintiff in that matter, Roderick Grant ("Grant"), sought relief under Section 1981 to represent a class of non-South Asians who worked for TMA and allegedly experienced discrimination in hiring, staffing, promotion, and termination. *Id.* TMA responded to Grant's complaint and moved to dismiss Grant's claims but later withdrew its motion to dismiss and instead filed a motion to compel arbitration. *Id.*

On June 5, 2019, Grant sought leave to amend his complaint to add Plaintiff as a named plaintiff. (*See* July 2023 3d Cir. Op. 4, ECF No. 28-2.) On December 5, 2019, the magistrate judge in the Grant Action issued a report and recommendation ("R&R") recommending that the district court grant TMA's motion to compel arbitration, stay the case, and deny the motion to add Plaintiff as a representative plaintiff. *See Grant*, 2019 WL 7865165, at *11. Williams did not file an objection to this R&R, and on February 6, 2020, the North Dakota District Court adopted the magistrate judge's report and recommendation in full and granted TMA's motion to compel individual arbitration, denied Grant's motion for leave to amend, and stayed the case pending the

individual arbitration proceedings. *Grant v. Tech Mahindra (Americas), Inc.*, No. 18-171, 2020 WL 589529, at *1-*3 (D.N.D. Feb. 6, 2020). As such, Grant's efforts to add Plaintiff as a named plaintiff to the Grant Action were unsuccessful.

        2.       *Williams I*

Plaintiff filed the instant action on April 21, 2020, seventy-five days after the motion for leave to amend the complaint in the Grant Action was denied, and four years and eight months after Plaintiff's employment ended with TMA. (*See* Compl.) Plaintiff brought a single claim under § 1981, alleging that TMA engaged in a pattern or practice of race discrimination against non-South Asians. (*See id.*)

TMA moved to dismiss the Complaint on three grounds: (1) Plaintiff lacked Article III standing; (2) Plaintiff failed to state a claim of race discrimination; and (3) the claims were time barred under the applicable statute of limitations (the "First Motion to Dismiss"). (*See generally* ECF Nos. 5, 6.) This Court granted the First Motion to Dismiss without prejudice on several grounds (the "January 2021 Opinion").[2] (Jan. 2021 Op., ECF No. 14.) First, the Court rejected TMA's standing-based argument and found that Plaintiff suffered an injury-in-fact that was fairly traceable to TMA's conduct. (*Id.* at 9.) Second, in connection to TMA's statute of limitations defense, the Court found that *American Pipe* tolling only applied to Plaintiff's individual claims and not Plaintiff's class action claim.[3] (*Id.* at 9-13 (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S.

---

[2] The Court found that Plaintiff had standing and that he was likely a member of the putative class in the Grant Class Action. (Jan. 2021 Op. 7-9, 12-13.)

[3] In *China Agritech*, the Supreme Court determined that *American Pipe* does not toll the claims of "a putative class representative . . . who brings his claims as a new class action after the statute of limitations has expired," because "[t]he 'efficiency and economy of litigation' [rationales] that support tolling of individual claims . . . do not support maintenance of untimely successive class actions." *China Agritech v. Resh*, 584 U.S. 732, 740 (2018).

538 (1974)).) Third, for Plaintiff's remaining individual claims, the Court concluded that Plaintiff failed to state a claim for relief under Section 1981 because he did not allege that, but for his race, TMA would not have terminated his employment. (*Id.* at 14-15.) The Court offered Plaintiff an opportunity to amend his Complaint, but Plaintiff elected to stand on his Complaint and appeal the Court's decision to the Third Circuit. (ECF No. 16.)

### 3.    *Williams II*

In Plaintiff's appeal to the Third Circuit, Plaintiff argued that the Court did not consider prior to dismissing the class action whether "wrong-forum tolling" would allow him to proceed with a successive class action. (*See* July 2023 3d Cir. Op. 5.) The Third Circuit did not address the merits of Plaintiff's arguments. Instead, the Third Circuit, in a precedential opinion, vacated and remanded the case to this Court "to consider whether wrong-forum tolling applie[d] and/or whether [Plaintiff] ha[d] plausibly pleaded a *prima facie* pattern-or-practice claim." (*Id.* at 10.)

### 4.    *Williams III*

On remand, TMA filed a renewed motion to dismiss (the "Second Motion to Dismiss") (ECF No. 30), asserting that: (1) Plaintiff was not entitled to wrong-forum tolling; and (2) Plaintiff did not plead a plausible pattern or practice claim of discrimination under Section 1981 (Def.'s Mem. in Supp. of Second Mot. to Dismiss 12-33, ECF No. 31). This Court found that the wrong-forum tolling doctrine did not apply because Plaintiff's amended complaint was "not filed in a timely fashion because it was never accepted by the North Dakota District Court." (Feb. 2024 Op. 6-11, ECF No. 37.) Having determined that the statute of limitations barred the class claims, the Court ultimately dismissed the action without prejudice because Plaintiff did not indicate that he wanted to pursue his induvial claim. (*Id.* at 11-12.) The Court did, however, afford Plaintiff an opportunity to amend his Complaint in case he did want to pursue his individual claim. (*Id.* at 12.)

Plaintiff once again elected to stand on his Complaint and appealed the February 2024 Opinion to the Third Circuit. (ECF No. 41.)

### 5.    *Williams IV*

On appeal, the Third Circuit considered whether "a motion for leave to file an amended complaint to add a plaintiff, accompanied by a proposed amended complaint, constitute[s] a 'filing' by the proposed plaintiff sufficient to permit that plaintiff to rely on wrong-forum tolling, even if that motion is denied." (Jan. 2025 3d Cir. Op., ECF No. 48-1.) The Third Circuit held that:

> wrong-forum tolling is available given that[:] (1) Williams sought to assert his claim within the statute of limitations applicable to his claim by seeking to join as a named plaintiff an existing putative class action[;] (2) the first-filed rule barred him from filing a duplicative lawsuit in another forum[;] and (3) the court overseeing the existing putative class action denied the motion to add Williams solely because the existing plaintiff was compelled to arbitrate his claim.

(*Id.* at 9.) The Third Circuit, in an unpublished opinion, vacated the February 2024 Opinion and remanded for the Court to consider "whether equitable tolling is appropriate." (*Id.*) The Third Circuit instructed that this Court may consider whether:

> (1) the first action gave defendant timely notice of [P]laintiff's claim; (2) the lapse of time between the first and second actions will not prejudice the defendant; and (3) the plaintiffs acted reasonably and in good faith in prosecuting the first action, and exercised diligence in filing the second action.

(*Id.* at 9 n.5 (quoting *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 (3d Cir. 2002)).)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure[4] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

---

[4] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    DISCUSSION

### A.    Wrong-Forum Equitable Tolling

Equitable tolling is a legal principle under which "plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner

due to sufficiently inequitable circumstances."[5] *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). This occurs in three circumstances: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009). Here, the Third Circuit has already held that the third circumstance, "wrong-forum tolling[,] is available to Williams," but left the question of "whether the equitable tolling principles support tolling in this case" to this Court in the first instance. (Jan. 2025 3d Cir. Op. 9.)

As an initial matter, in general, "the [Rules] require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)). The Third Circuit "permit[s] a limitations defense to be raised by a motion under Rule 12(b)(6) 'only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."'" *Schmidt*, 770 F.3d at 249 (quoting *Robinson*, 313 F.3d at 134-35). "[T]he burden is on *the defendant*[] to establish that the complaint shows that [plaintiff's] claims are untimely." *Acrison, Inc. v. Rainone*, No. 22-3274, 2023 WL 8166786, at *2 (3d Cir. Nov. 24, 2023) (emphasis in original)). But if "the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."

---

[5] The parties agree that the statute of limitations for a Section 1981 claim based on staffing, promotion, and termination—which comprises Plaintiff's individual claim—is four years after the termination of employment. (*See* Def.'s Moving Br. 11; Pl.'s Opp'n Br. 27-28; Compl. ¶ 28 (Williams "was terminated because of TMA's pattern or practice of discrimination.").)

*Robinson*, 313 F.3d at 135) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

Where it is clear on the face of the complaint that a claim is time-barred, "plaintiffs bear the burden of showing that their untimely claims are subject to equitable tolling," and "must plead the applicability of the doctrine." *Margolis v. Warner Chilcott (US) LLC*, No. 17-4550, 2018 WL 2455925, at *6 (D.N.J. May 31, 2018) (internal quotation marks and citation omitted). "In fact, 'a plaintiff's tolling claim is subject to the *Twombly/Iqbal* standard of review' and therefore 'the face of the complaint must set forth sufficient factual matter to allow the court to draw the reasonable inference that discovery will show that the plaintiff's untimely claim is entitled to tolling.'" *Id.* (emphasis added) (citation omitted).

Here, it is clear on the face of the Complaint that it was filed outside of the statute of limitations. (*See generally* Compl.) Specifically, Plaintiff alleges that he was terminated on August 19, 2015. (*Id.* ¶ 28.) As the Court has already found, the applicable statute of limitations is four years, which means that Plaintiff needed to file his claim no later than August 19, 2019. Since Plaintiff filed the instant action after August 19, 2019—specifically, on April 21, 2020 (*see* Compl.)—Plaintiff's Complaint, as pled, is untimely. Plaintiff also does not allege any facts concerning the Grant Action or equitable tolling that would allow this Court to draw the reasonable inference that Plaintiff's claim is entitled to equitable tolling. (*See generally id.*) While Plaintiff points to an affidavit filed in response to TMA's Second Motion to Dismiss that purportedly "establish[es] the facts supporting his equitable tolling argument," (Pl.'s Opp'n Br. 26 (citing ECF No. 33)), "[a] [p]laintiff may not amend the pleadings through arguments found in his or her Opposition Brief in order to support application of equitable tolling." *Slater v. Metro S. N.J. State Police*, No. 22-262, 2023 WL 1818380, at *4 (D.N.J. Feb. 8, 2023) (dismissing claims as barred

by the statute of limitations where "[t]here [we]re no facts in the complaint from which the Court could reasonably conclude that equitable tolling would be appropriate."). Since Plaintiff has pled no facts in his Complaint concerning equitable tolling, the Court finds dismissal appropriate because Plaintiff clearly filed his Complaint after the statute of limitations had run. The Court will, however, grant Plaintiff the opportunity to amend his Complaint and add allegations concerning equitable tolling.

IV.     **CONCLUSION**

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss. The Court will issue an Order consistent with this Memorandum Opinion.

Dated: September  25th , 2025

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

11