NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LEE WILLIAMS, *individually and in his representative capacity*,<br><br>Plaintiff,<br><br>v.<br><br>TECH MAHINDRA (AMERICAS), INC.,<br><br>Defendant. | Civil Action No. 20-4684 (MAS) (JTQ)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Tech Mahindra (Americas), Inc.'s ("TMA" or "Defendant") Third Renewed Motion to Dismiss (the "Motion") (ECF No. 72) Plaintiff Lee Williams's ("Williams" or "Plaintiff") Amended Complaint (ECF No. 71). Plaintiff opposed (ECF No. 75), and Defendant replied (ECF No. 79). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, the Court grants Defendant's Motion.

**I.    BACKGROUND**[1]

**A.    Factual Background**

In this putative class action, Plaintiff brings claims under 42 U.S.C. § 1981 ("Section 1981") against his former employer, TMA, an information technology ("IT") company based in India. (*See* Am. Compl. ¶¶ 2, 3, ECF No. 71.)

---

[1] For the purpose of considering Defendant's Motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

### *1.    Williams's History with TMA*

Plaintiff is "of Caucasian [r]ace and American national origin." (*Id.* ¶ 4.) He is a "highly skilled senior technology sales executive" who was hired by TMA in May 2014 for a role based in Columbus, Ohio. (*Id.* ¶¶ 28, 29.) During the interview process, TMA informed Plaintiff that "it had a good relationship with the potential clients in his territory and that there was an existing pipeline of future sales that he could utilize to generate new business and sales with these accounts." (*Id.* ¶ 29.) Plaintiff also confirmed that he had contacts with certain accounts that he had called during his career. (*Id.*) On June 2, 2014, Plaintiff began the role as a "'hunter' responsible for generating business and sales from new banking clients," working on a team of eight individuals where Plaintiff was one of two non-South Asian employees. (*Id.* ¶¶ 29, 30.) Plaintiff alleges that the "vast majority of TMA's managerial and supervisory staff" are of South Asian descent, including his manager. (*Id.*)

Shortly after joining TMA, Plaintiff discovered that TMA did not have the good reputation in the area that it presented. (*Id.* ¶ 32.) As a result, it was hard for Plaintiff to secure clients, despite his diligent efforts. (*Id.* ¶¶ 32, 34.) Plaintiff reported these struggles to his manager and asked for assistance, but his requests went unanswered. (*Id.* ¶ 32.) Despite these challenges, Plaintiff claims he performed well in his role by successfully identifying opportunities for future sales. (*Id.* ¶ 34.) In February 2015, Plaintiff received a "small raise" for his efforts. (*Id.*) Plaintiff was never promoted, however, and he attributes his lack of advancement to "TMA's pattern or practice of discrimination[.]" (*Id.*) Additionally, during his time with TMA, Plaintiff attended three regional meetings where "the vast majority of [attendees] (over 90%)" were of South Asian descent and Hindi was "often spoken socially to the exclusion of [Plaintiff.]" (*Id.* ¶ 33.)

2

In June 2015, Plaintiff's manager informed Plaintiff that he was not delivering on his sales goals and would be placed on a sixty-day Performance Improvement Plan (the "PIP") effective June 15, 2015. (*Id.* ¶ 35.) Plaintiff claims that the PIP was "pretextual, and was designed to set [him] up to fail so that TMA could terminate his employment." (*Id.*) On August 19, 2015, two months after TMA instituted the PIP, TMA terminated Plaintiff's employment. (*Id.* ¶ 36.)

### 2.    *TMA's Business Model*

TMA is incorporated in New Jersey and contracts with companies within the United States to provide IT outsourcing and consulting services. (*Id.* ¶¶ 2, 5.) TMA has about twenty-five offices and employs approximately 5,100 employees in the United States. (*Id.* ¶¶ 2, 18.) Plaintiff alleges that TMA operates under a "general policy of discrimination" that favors South Asians in "hiring, staffing, promotion, and termination decisions." (*Id.* ¶ 20.) Plaintiff identifies four "mutually reinforcing prongs" of TMA's business model which he alleges evidence discrimination against non-South Asian employees or prospective employees. (*Id.*) First, TMA secures more H-1B visas for prospective employees "than it actually has a present need for" in order to "fulfill its employment preference for South Asians[.]" (*Id.* ¶ 22.) These individuals are "placed in TMA's inventory of visa workers for use on future projects in the [United States]." (*Id.*) TMA then gives South Asian visa holders "preference for open positions in the [United States]" and removes non-South Asian individuals from their positions in favor of "South Asian visa-ready" individuals. (*Id.* ¶ 23.) "Second, TMA gives preference to South Asian applicants located in the [United States] over non-South Asian applicants." (*Id.* ¶ 24.) Third, TMA promotes South Asian employees over non-South Asian employees. (*Id.* ¶ 25.) Fourth, TMA terminates non-South Asian employees at disproportionately high rates as compared to TMA's South Asian employees. (*Id.* ¶ 26.) Plaintiff claims that the effects of this discrimination are apparent in the racial makeup of TMA's workers

3

because, "[w]hile only about [twelve percent] of the relevant labor market (the IT industry) is South Asian, approximately [ninety percent] (or more) of TMA's United States-based workforce is South Asian." (*Id.* ¶ 27.)

**B.      Procedural History**

The Court notes that this matter has an extensive procedural history, which is summarized below.

*1.      Grant Class Action*

As a non-South Asian employee who was terminated by TMA, Williams was a member of a putative class action filed in the United States District Court for the District of North Dakota (the "*Grant* Action") against TMA alleging claims of racial discrimination. (*Id.* ¶ 11); s*ee Grant v. Tech Mahindra (Ams.), Inc.*, No. 18-171, 2019 WL 7865165, at *1 (D.N.D. Dec. 5, 2019). The lead plaintiff in that matter, Roderick Grant ("Grant"), sought relief under Section 1981 to represent a class of non-South Asians who worked for TMA and allegedly experienced discrimination in hiring, staffing, promotion, and termination. (Am. Compl. ¶ 11); *Grant*, 2019 WL 7865165, at *1. TMA responded to Grant's complaint and moved to dismiss his claims but later withdrew its motion to dismiss and instead filed a motion to compel arbitration. (Am. Compl. ¶ 12); *Grant*, 2019 WL 7865165, at *1.

On June 5, 2019, Grant sought leave to amend his complaint to add Williams as a named plaintiff. (Am. Compl. ¶ 13.) On December 5, 2019, the magistrate judge in the *Grant* Action issued a report and recommendation (the "R&R") recommending that the district court grant TMA's motion to compel arbitration, stay the case, and deny the motion to add Plaintiff as a representative plaintiff. *Grant*, 2019 WL 7865165, at *11. Williams did not file an objection to the R&R, and on February 6, 2020, the North Dakota District Court adopted the R&R which:

4

(1) granted TMA's motion to compel individual arbitration; (2) denied Grant's motion for leave to amend; (3) dismissed Grant's claims for class-wide arbitration; and (4) stayed the case pending the individual arbitration proceedings. *Grant v. Tech Mahindra (Ams.), Inc.*, No. 18-171, 2020 WL 589529, at \*1 (D.N.D. Feb. 6, 2020). As such, Grant's efforts to add Williams as a named plaintiff to the *Grant* Action were unsuccessful.

### 2. *Williams I*

Plaintiff commenced the instant action against Defendant on April 21, 2020, seventy-five days after the motion for leave to amend the complaint in the *Grant* Action was denied, and four years and eight months after Defendant terminated Plaintiff. (Am. Compl. ¶ 17; *see generally* Compl., ECF No. 1.) Plaintiff brought a single claim under Section 1981, alleging that TMA engaged in a pattern or practice of race discrimination against non-South Asians. (*See generally* Compl.)

Defendant moved to dismiss the original Complaint on three grounds: (1) Plaintiff lacked Article III standing; (2) Plaintiff failed to state a claim of race discrimination under Section 1981; and (3) Plaintiff's claims were time barred under the applicable statute of limitations. (*See* Def.'s First Mot. to Dismiss, ECF No. 5; Def.'s Br. in Supp. of First Mot. to Dismiss, ECF No. 6.) The Court granted the first motion to dismiss on several grounds and dismissed the original Complaint without prejudice. (*See generally* Jan. 2021 Op. ("*Williams I*"), ECF No. 14; Jan. 2021 Order, ECF No. 15.) First, the Court rejected Defendant's standing challenge, finding that Plaintiff suffered an injury-in-fact that was fairly traceable to TMA's conduct. (*Williams I* 9.) The Court further found that while Plaintiff's class action claim was untimely, his individual claim was entitled to *American*

*Pipe* tolling.[2] (*Id.* at 9-13 (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974)).) Yet despite the availability of *American Pipe* tolling, the Court held that Plaintiff failed to state an individual claim for relief under Section 1981 because he did not allege that, but for his race, TMA would not have terminated his employment. (*Id.* at 14-15.) The Court offered Plaintiff an opportunity to amend his Complaint, but Plaintiff elected to stand on his Complaint and appealed the Court's decision to the Third Circuit. (Pl.'s Feb. 24, 2021, Not., ECF No. 16.)

### 3.  *Williams II*

In his appeal of *Williams I* to the Third Circuit, Plaintiff argued that the Court "erred by dismissing his class action as untimely without addressing his wrong-forum tolling argument." (July 2023 3d Cir. Op. ("*Williams II*") 5, ECF No. 28-2.) The Third Circuit found that it was an "error for the District Court to dismiss [Plaintiff's] class action allegations as untimely without considering wrong-forum tolling." (*Id.* at 7.) As a result, the Third Circuit vacated the decision and remanded for this Court "to consider whether wrong-forum tolling applies and/or whether [Plaintiff] has plausibly pleaded a *prima facie* pattern-or-practice claim." (*Id.* at 10.)

### 4.  *Williams III*

On remand, Defendant filed a renewed motion to dismiss, asserting that Plaintiff was not entitled to equitable tolling and failed to plead a plausible pattern or practice claim under Section 1981. (Def.'s Renewed Mot. to Dismiss, ECF No. 30; Def.'s Br. in Supp. of Renewed Mot. to Dismiss, ECF No. 31.) In opposition, Plaintiff argued that he qualified for "wrong-forum" equitable tolling because the motion to amend filed in the *Grant* Action "served to timely commence his claims for purposes of the statute of limitations." (Pl.'s Opp'n to Def.'s Renewed

---

[2] "*American Pipe* 'tolls the applicable statute of limitations for putative class members.'" (*Williams I* 12 (quoting *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 609 (3d Cir. 2018)).)

Mot. to Dismiss 23-24, ECF No. 32.) The Court rejected Plaintiff's argument, finding that wrong-forum equitable tolling did not apply because Plaintiff's Complaint "was not filed in a timely fashion" as it was "never accepted by the North Dakota District Court." (Feb. 2024 Op. ("*Williams III*") 10, ECF No. 37.) Accordingly, the Court granted Defendant's motion, dismissed Plaintiff's class claims with prejudice, and dismissed Plaintiff's individual claim without prejudice to afford him the opportunity to amend his Complaint. (*Id.* at 11-12.) Plaintiff once again elected to stand on his Complaint. (*See* Pl.'s Feb. 20, 2024, Not. of Intent, ECF No. 41.)

### 5.    *Williams IV*

On appeal, the Third Circuit considered whether "a motion for leave to file an amended complaint to add a plaintiff, accompanied by a proposed amended complaint, constitute[s] a 'filing' by the proposed plaintiff sufficient to permit that plaintiff to rely on wrong-forum tolling, even if it is denied[.]" (Dec. 2024 3d Cir. Op. ("*Williams IV*") 4, ECF No. 48-1.) The Third Circuit held that wrong-forum tolling was available and remanded to the District Court to consider "in light of the availability of wrong-forum tolling, whether equitable tolling is appropriate." (*Id.* at 9.)

### 6.    *Williams V*

On remand, Defendant renewed its motion to dismiss once more, arguing that Plaintiff was not entitled to equitable tolling and that Plaintiff failed to state a claim under Section 1981. (Def.'s Second Renewed Mot. to Dismiss, ECF No. 58; Def.'s Br. in Supp. of Second Renewed Mot. to Dismiss, ECF No. 59.) The District Court granted the motion to dismiss, finding that Williams "pled no facts in his Complaint concerning equitable tolling" and dismissed without prejudice, granting Plaintiff the opportunity to "amend his Complaint to add allegations concerning equitable tolling." (Sep. 2025 Op. ("*Williams V*") 11, ECF No. 69; Sep. 2025 Order, ECF No. 70.)

### 7.    *Williams VI*

On October 24, 2025, Plaintiff filed an Amended Complaint asserting one cause of action for disparate treatment pursuant to Section 1981. (*See generally* Am. Compl.) On November 7, 2025, Defendant filed the instant Motion. (*See generally* Def.'s Third Renewed Mot. to Dismiss, ECF No. 72.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 75), and Defendant replied (Def.'s Reply Br., ECF No. 79).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure[3] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the

---

[3] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    **DISCUSSION**

Defendant moves to dismiss the Amended Complaint in its entirety because: (1) Plaintiff's claim is time-barred and equitable tolling does not apply; and (2) Plaintiff otherwise fails to "plead a plausible pattern or practice of intentional race discrimination." (Def.'s Moving Br. 8, 27, ECF No. 73.) The Court first turns to its analysis of whether equitable tolling applies to Plaintiff's claim.

### A.    **Wrong-Forum Equitable Tolling**

The statute of limitations may be equitably tolled where a plaintiff is "prevented from filing in a timely manner due to sufficiently inequitable circumstances."[4] *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999) (citations omitted). Such inequitable circumstances occur: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his . . . rights; or (3) where the plaintiff has timely asserted his . . . rights mistakenly in the wrong forum." *Hedges*, 404 F.3d at 751 (citation omitted). Importantly, "[t]he plaintiff[] . . . must 'exercise due diligence in preserving his claim.'" *Id.* (citation omitted).

In *Williams IV*, the Third Circuit concluded that wrong-forum tolling is available to Plaintiff and remanded to this Court to determine "whether the equitable tolling principles support tolling in this case." (*Williams IV* 9.) The Third Circuit instructed this Court to consider whether:

---

[4] Plaintiff's four-year statute of limitations period for his claim expired on August 19, 2019. (Am. Compl. ¶ 13 n.2.)

> (1) the first action gave [D]efendant timely notice of [P]laintiff's claim; (2) the lapse of time between the first and second actions will not prejudice . . . [D]efendant; and (3) . . . [P]laintiff[] acted reasonably and in good faith in prosecuting the first action, and exercised diligence in filing the second action.

(*Id.* at 9 n.5 (quoting *Island Insteel*, 296 F.3d at 218).)[5] The Third Circuit has reasoned that this approach "avoids the unfairness that would occur if a plaintiff who diligently and mistakenly prosecuted his claim in a court that lacked personal jurisdiction were barred under the statute of limitations from promptly refiling in a proper jurisdiction." *Island Insteel*, 296 F.3d at 217. The Court now considers whether Plaintiff has satisfied these elements such that his claim may be equitably tolled.

### 1.    The Grant Action Gave Defendant Timely Notice of Plaintiff's Claim

The first prong of the analysis looks at whether there was timely notice. *See id.* at 204. Timely notice requires the first claim be filed "within the statutory period," and the filing of that claim must "alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim." *Honchariw v. County of Stanislaus*, 530 F. Supp. 3d 939, 950 (E.D. Cal. 2021), *aff'd*, No. 21-15801, 2022 WL 522287 (9th Cir. 2022) (citation omitted); *see also Island Insteel*, 296 F.3d at 217 (rejecting previous New Jersey equitable tolling framework and instead adopting framework provided by Ninth Circuit (citing, among other cases, *Mayes v. Leipziger*, 729 F.2d 605, 608 (9th Cir. 1984))).

---

[5] The Court recognizes that Defendant urges the Court to ignore any "policy factors" and instead only consider the two-prong test set forth in *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016), which provides that "a litigant is entitled to equitable tolling . . . only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently[;] and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" (Def.'s Moving Br. 11, 11 n.1.) This Court notes the factors required under binding precedent and will undertake its analysis as directed by the Third Circuit. (*See Williams IV* 9 n.5.)

Here, Plaintiff was terminated on August 19, 2015, and therefore, the four-year statute of limitations period expired on August 19, 2019. (Am. Compl. ¶ 13 n.2.) The lead plaintiff in the *Grant* Action sought leave to amend to add Williams as a named plaintiff on June 5, 2019, within the relevant statute of limitations. (*Id.* ¶ 13.) As the Third Circuit held in *Williams IV*, Plaintiff attempting to join the *Grant* Action constituted a "filing" for purposes of wrong-forum tolling "because the document was delivered to the court and entered on the docket." (*Williams IV* 6-7.)

Moreover, by filing in the *Grant* Action, Defendant was alerted to Plaintiff's claims against it and could "begin investigating the facts which form the basis for the second claim." *Honchariw*, 530 F. Supp. 3d at 950. The claims brought in the instant case relate to the same period of Plaintiff's employment and termination, and both the filing in the *Grant* Action and the Amended Complaint here allege the same pattern or practice at the core of the discrimination claims. (*See generally* Am. Compl.); Ex. 2 to Mot. for Leave to File First Am. Compl. (Proposed Am. Compl.), *Grant v. Tech Mahindra (Ams.), Inc.*, No. 18-171 (D.N.D. June 5, 2019), ECF No. 52-2.

Based on these findings, Plaintiff's first action gave Defendant timely notice of his claims.

### 2.      *Lapse of Time Will Not Prejudice Defendant*

Under the second part of the analysis, equitable tolling requires that "the lapse of time between the first and second actions will not prejudice the defendant." *Island Insteel*, 296 F.3d at 204-05. Defendant argues that prejudice is "simply irrelevant" in equitable tolling considerations. (Def.'s Moving Br, 14 n.4 (quoting *Sch. Dist. of City of Allentown v. Marshall*, 657 F.2d 16, 20 (3d Cir. 1981)).) Yet if the Court does weigh prejudice as a factor, Defendant contends it will be

prejudiced because it will be "forced to defend against class claims pertaining to conduct dating back to 2014[.]"[6] (*Id.* (emphasis omitted).)

The Court recognizes that "lack of prejudice" to a defendant is not "a determinative factor" in equitable tolling considerations. *Seitzinger*, 165 F.3d at 242. "[O]nce a factor that might justify equitable tolling is identified," however, "prejudice is a factor to be considered." *Id.* Here, the Court has found that the *Grant* Action gave timely notice to Defendant and, therefore, "a factor that might justify equitable tolling" has been identified. *Id.* As such, prejudice considerations are warranted.

The Court finds that the seventy-five-day lapse between when the North Dakota District Court denied Plaintiff's attempt to join the *Grant* Action and when Plaintiff filed the instant action will not prejudice Defendant. Defendant was made aware of Plaintiff's claim against it because it was privy to the amended complaint attached to the motion for leave to amend to add Williams as a named plaintiff in the *Grant* Action. *See* Proposed Am. Compl., *Grant*, No. 18-171 (D.N.D. June 5, 2019). Once Plaintiff's attempt to join the *Grant* Action was denied, he refiled within the tolled statute of limitations. These circumstances do not show any evidence of prejudice against Defendant. *See Flores v. Predco Servs. Corp.*, No. 10-1320, 2011 WL 3273573, at *1, *6 (D.N.J. 2011) (finding that the plaintiff refiling the same claim in federal court around two years after originally filing in state court did not prejudice the defendant); *Hedges*, 404 F.3d at 753 (holding that the defendant "suffered no prejudice" because the defendant had notice of the first claim within the statute of limitations period).

---

[6] Plaintiff recognizes prejudice to Defendant as a consideration for equitable tolling but does not provide any argument as to why his claim will not prejudice Defendant. (*See* Pl.'s Opp'n Br. 10.)

### 3.    *Plaintiff Acted Reasonably and in Good Faith and Exercised Diligence*

"To invoke equitable tolling, [Plaintiff] must [also] show that [he] exercised reasonable diligence in investigating and bringing [his] claims." *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1126 (3d Cir. 1997). Defendant contends Plaintiff was not diligent in bringing his claim for several reasons, including because: (1) Plaintiff did not attempt to assert his claim until three years after the start of the limitations period;[7] (2) the *Grant* Action was pending before the North Dakota District Court for ten months before Plaintiff attempted to join as a named plaintiff; (3) Plaintiff did not refile while the motion for leave to amend in the *Grant* Action was pending; and (4) Plaintiff waited seventy-five days to file elsewhere after the motion for leave to amend was denied. (Def.'s Moving Br. 21-27.) The Court is unpersuaded by these arguments and finds that Plaintiff acted diligently by: (1) attempting to join the *Grant* Action within the relevant statute of limitations period; and (2) subsequently filing the present action seventy-five days after leave to amend was denied.

Moreover, Plaintiff's decision not to file elsewhere while the motion was pending is not evidence of a lack of diligence. As held by the Third Circuit in *Williams IV*, the first-filed rule "prohibited [Plaintiff] from filing a duplicative federal lawsuit in New Jersey where one already

---

[7] Defendant cites to a series of cases to argue that Plaintiff must show that he acted diligently throughout the entire limitations period. (Def.'s Moving Br. 21-22.) These cases are distinguishable, however, because they do not involve wrong-forum tolling, and instead concern initial actions filed past the statute of limitations period and are often in the context of habeas petitions. *See, e.g., Smith v. Davis*, 953 F.3d 582, 600 (9th Cir. 2020) (noting that habeas petition was filed after statute of limitations period expired); *Lago v. Davis*, No. 22-2119, 2023 WL 4677701, at *3 (D.N.J. July 21, 2023) (same); *Carpenter v. Douma*, 840 F.3d 867, 870-71 (7th Cir. 2016) (same); *Jackson v. Davis*, 933 F.3d 408, 409-11 (5th Cir. 2019) (noting that petitioner's filing was delayed because he was not made aware that his habeas petition had been denied until eighteen months after the denial); *Rivera v. Trenton State Prison*, No. 21-17069, 2021 WL 5322355, at *2 (D.N.J. Nov. 16, 2021) (noting plaintiff filed after the end of limitations period); *United States v. Tinsman*, No. 21-7024, 2022 WL 3208346, at *2, *4 (10th Cir. Aug. 9, 2022) (recognizing that petitioner filed motion to vacate his sentence after expiration of limitations period).

existed in North Dakota." (*Williams IV* 7.) Plaintiff refiled his claims against Defendant in the instant action seventy-five days after the North Dakota District Court rejected his attempt to join the *Grant* Action. (*See* Am. Compl. ¶ 17 (Plaintiff "re-filed his claim[] on April 21, 2020, exactly [seventy-five] days [after the motion to amend was denied] and within the [four]-year statute of limitations period.").) Refiling after seventy-five days does not reflect the level of delay or neglect necessary to show a lack of diligence. As such, the Court finds that Plaintiff acted reasonably and in good faith and exercised diligence in pursuing his claims against Defendant. *See Santos ex rel. Beato v. United States*, 559 F.3d 189, 198-99 (3d Cir. 2009) (finding that facts showed that plaintiff diligently pursued her rights despite her delay); *Walck v. Discavage*, 741 F. Supp. 88, 91-92 (E.D. Pa. 1990) (finding that the plaintiff exercised diligence despite filing in the wrong district because her mistaken belief regarding the original forum was reasonable under the circumstances).

Based on this analysis, the Court finds that equitable tolling applies and, therefore, Plaintiff's claim is not time barred by the statute of limitations. The Court now turns to Defendant's arguments regarding whether Plaintiff failed to state a claim upon which relief can be granted.

## B.    Failure to State a Claim

Section 1981 provides that:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

14

To state a pattern or practice of discrimination claim under Section 1981[8], "the plaintiff must plead factual content that allows the court to draw a reasonable inference that the defendant engaged in 'more than the mere occurrence of isolated or "accidental" or sporadic discriminatory acts.'" *United States v. Nobel Learning Comms., Inc.*, 676 F. Supp. 3d 379, 383 (E.D. Pa. 2009) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). A plaintiff must sufficiently allege that "discrimination was the company's standard operating procedure—the regular rather than the unusual practice." *Teamsters*, 431 U.S. at 336. "A plaintiff can prove a pattern or practice of discrimination by the existence of an express discriminatory policy, or by numerous instances of discrimination and anecdotal evidence from which a discriminatory pattern or practice can be inferred." *Nobel*, 676 F. Supp. 2d at 383 (first citing *Teamsters*, 431 U.S. at 335; and then citing *United States v. Bd. of Educ.*, 911 F.2d 882, 892 (3d Cir. 1990)). "At the motion to dismiss stage, the plaintiff need only allege sufficient facts that allow a court to reasonably infer a pattern or practice of discrimination." *Id.*

Here, Plaintiff alleges that "[w]hile only about [twelve percent] of the relevant labor market (the IT industry) is South Asian, approximately [ninety percent] (or more) of TMA's United States-based workforce is South Asian, as is the vast majority (if not all) of its managerial and supervisory-level staff." (Am. Compl. ¶ 27.) Plaintiff also alleges that TMA: (1) secures more H-1B visas for prospective employees "than it actually has a present need for" in order to "fulfill its employment preference for South Asians" (*id.* ¶ 22); (2) gives South Asian visa holders

---

[8] The Court notes that Plaintiff has affirmatively represented that he "does not bring an *individual* hiring claim . . . and instead asserts a pattern or practice claim on behalf of both applicants and employees who were impacted by the same company-wide discriminatory scheme." (Pl.'s Opp'n Br. 12 (emphasis in original); *see also id.* ("Mr. Williams does not assert an individual failure-to-hire claim . . . .").) As a result, the Court analyzes only whether Plaintiff has adequately pleaded his sole pattern and practice class claim.

15

"preference for open positions in the [United States]" and removes non-South Asian individuals from their positions in favor of "South Asian visa-ready" individuals (*id.* ¶ 23); (3) "gives preference to South Asian applicants located in the [United States] over non-South Asian applicants" (*id.* ¶ 24); (4) promotes South Asian employees over non-South Asian employees (*id.* ¶ 25); and (5) terminates non-South Asian employees at disproportionately high rates as compared to TMA's South Asian employees (*id.* ¶ 26). The Court finds that these allegations are insufficient to state a pattern or practice claim for at least three reasons.

*First*, the Amended Complaint contains nothing more than bald assertions regarding purported discriminatory practices. While Plaintiff generally alleges that he was denied advancement and was terminated due to Defendant's practice of discrimination (*see id.* ¶¶ 34, 35), Plaintiff fails to allege any explicit discriminatory actions toward him or others (*see generally id.*). The events he does reference (e.g., being one of two non-South Asians on his team, attending conferences where Hindi was spoken socially, and being placed on a PIP and terminated (*see id.* ¶¶ 30, 33, 35) do not allow the Court to "reasonably infer a pattern or practice of discrimination" or conclude that discrimination is Defendant's "standard operating procedure" because Plaintiff does not plead any facts tying Defendant's alleged discriminatory practices to any specific adverse action. *Nobel*, 676 F. Supp. 2d at 383; *Teamsters*, 431 U.S. at 336; *Michel v. Workrise Techs Inc.*, No. 21-681, 2023 WL 2874445, at *4-5 (W.D. Tex. Apr. 10, 2023) (finding that the factual bases set forth in the complaint, which included "one act of discrimination, [a] layoff" and "[r]acist statements by an individual who is not even a decisionmaker," could not establish a pattern or practice claim because plaintiff could not "allege facts that support that the unlawful discrimination was the company's 'standard operating procedure—the regular rather than the unusual practice'" (citation omitted)); *Krish v. Conn. Ear, Nose & Throat, Sinus & Allergy Specialists, P.C.*, 607

16

F. Supp. 2d 324, 332 (D. Conn. 2009) (noting that "plaintiff's allegations of systematic firing, even supported by allegations of three confirmatory instances, without more, does not render plausible plaintiff's allegations of a pattern or practice claim"); *McPherson v. McDonald's USA, LLC*, No. 23-2913, 2026 WL 851255, at *12 (N.D. Ill. Mar. 27, 2026) ("None of the alleged practices gel together to form a cohesive pattern or practice. . . . [The plaintiff's] allegations that the company's policies are overarchingly racist does not convert allegations of discrete acts into an allegation of a continuing violation."); *see also Berry v. Jacobs IMC, LLC*, 99 F. App'x 405, 410 (3d Cir. 2004) (affirming dismissal because "[a]lthough plaintiff claims that [defendant] engaged in a pattern and practice of discrimination, the acts alleged by him were, at most, isolated or sporadic" and "[t]here was no evidence showing that racial discrimination was [defendant's] 'standard operating procedure'").

*Second*, the Amended Complaint references only Plaintiff's own experience working for Defendant which is insufficient for a pattern-or-practice claim. (*See generally* Am. Compl.) To state a pattern or practice of discrimination claim, a plaintiff is "generally required to identify other individuals against whom the defendant engaged this conduct for the claim to survive a motion to dismiss."[9] *Fabian v. St. Mary's Med. Ctr.*, No. 16-4741, 2017 WL 3494219, at *5-6 (E.D. Pa. Aug. 11, 2017) (collecting cases) (dismissing plaintiff's pattern or practice of discrimination claim because she "failed to identify other similarly affected employees").

*Third*, even if Plaintiff could show that his own termination was the result of discrimination, he still would not be able to state a pattern or practice claim because he has failed to show "a decision by a company to pursue a systematic, companywide policy of intentional

---

[9] The Court notes, however, that there is no "precise number of instances of discriminatory conduct against class members that must be proved," for a plaintiff to meet his burden. *Sperling v. Hoffman-La Roche, Inc.*, 924 F. Supp. 1346, 1392 (D.N.J. 1996).

17

discrimination." *Sperling*, 924 F. Supp. at 1363. Beyond general allegations regarding the statistics of South Asian employees in the relevant workforce and TMA's number of South Asian employees and H-1B policies for visas for prospective employees, Plaintiff makes no allegations concerning the underlying details of those policies or facts about the actual effects of specific policies on TMA's workforce. *See, e.g.*, *Petruska v. Reckitt Benckiser, LLC*, No. 14-3663, 2015 WL 1421908, at *8 (D.N.J. 2015) (dismissing pattern or practice claim because plaintiff failed to allege enough facts to show that individual instances of preference for younger, foreign workers was the company's "standard operating procedure"). Without more, Plaintiff has failed to adequately allege a pattern or practice of discrimination by Defendant.[10]

For these reasons, the Court finds that Plaintiff has failed to adequately state a pattern or practice of discrimination claim under Section 1981. Defendant's Motion is, accordingly, granted.

_____

[10] Moreover, the cases Plaintiff relies upon to support his argument that he has alleged sufficient facts to adequately plead his claim are readily distinguishable. In *Rajaram v. Meta Platforms, Inc.*, plaintiffs alleged that they were not hired despite their qualifications because of Meta's preference for H1-B visa holders and explicitly cited to examples of how they repeatedly interviewed and were denied roles, which in some instances went to visa holders, and mentioned allegations from the Department of Justice ("DOJ") of similar discrimination by Meta. Order Denying Def.'s Mots. to Dismiss Pls.' SAC, Strike, and Stay Discovery 2, 13-22, *Rajaram v. Meta Platforms, Inc.*, No. 22-2920, ECF No. 69 (N.D. Cal. Feb. 25, 2025); *see also id.* at 18 (noting that "the plaintiffs have pleaded facts outside of statistics, including anecdotes about the plaintiffs[] being qualified for positions yet never hired and DOJ allegations of similar discrimination by Meta"). In *MacLean v. Wipro Limited*, plaintiffs alleged that defendant practiced discrimination in its hiring, promotion, and termination decisions, favoring South Asians over non-South Asians, and alleged detailed accounts of the discrimination they faced and how the company's "appraisal score" system advantaged South-Asian employees. No. 20-3414, 2022 WL 4550629, at *2-3 (D.N.J. Sep. 29, 2022). Here, Plaintiff provides no such examples of similar experiences or underlying facts and instead relies on unsubstantiated assertions regarding purported general practices that are not tied to any adverse actions against Plaintiff or other employees of TMA. (*See generally* Am. Compl.)

## IV.    **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is granted. The Court will issue an Order consistent with this Memorandum Opinion.[11]

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: _____6/29/24_____

_____

[11] The Court notes that Plaintiff has already been afforded multiple opportunities to amend his allegations. The Court, however, will provide Plaintiff another opportunity to do so and cautions Plaintiff that this will be the final opportunity given to state a claim upon which relief can be granted.